BROWN RUDNICK LLP
Joel S. Miliband, #77438
jmiliband@brownrudnick.com
4 Park Plaza, Suite 420
Irvine, California 92614
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

Michael R. Graif
Seven Times Square, 46th Floor
New York, NY 10026
Tel.: 212-209-4800
mgraif@brownrudnick.com

Daniel A. Rozansky, #161647
drozansky@brownrudnick.com
2121 Avenue of the Stars, Suite 720
Los Angeles, California 90067
Telephone: (424) 525-0200
Facsimile:  (424) 525-0201

Katherine C. Dearing (*pro hac vice*)
1900 N Street, Fourth Floor
Washington, D.C. 20036
Tel.: 202-536-1700
kdearing@brownrudnick.com

*Attorneys for Plaintiff/Counterclaim-Defendant Rapid Relief Team (RRT) Ltd. and Counterclaim-Defendant Brown Rudnick LLP*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| RAPID RELIEF TEAM (RRT) LTD.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>CHERYL BAWTINHEIMER,<br><br>Defendant and Counterclaim-Plaintiff.<br><br>vs.<br><br>BROWN RUDNICK LLP, KATY-JADE CHURCH, and MICHAEL GRAIF,<br><br>Counterclaim-Defendants. | Case No. 4:25-cv-10864-JST<br><br>HON. JON S. TIGAR<br><br>**COUNTERCLAIM-DEFENDANTS RAPID RELIEF TEAM AND BROWN RUDNICK LLP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT/ COUNTERCLAIM-PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>DATE:      June 18, 2026<br>TIME:       2:00 P.M.<br>CTRM:    Courtroom 6 – 2nd Floor<br><br>Action Filed:  December 19, 2025<br>Amended Complaint Filed:  January 30, 2026 |

## TABLE OF CONTENTS

                                                                                    **Page**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 3

III.  LEGAL STANDARD ............................................................................................ 6

IV.   ARGUMENT ......................................................................................................... 6

      A.    Defendant Seeks a Mandatory Injunction, Requiring a Heightened Burden of Proof    6

      B.    Defendant Cannot Show Irreparable Harm    9

            1.    Defendant Fails to Show Harm Caused by Not Using RRT's Logo ......... 10

            2.    Defendant Is Free, and Has Continued, to Publish Videos, and Her Alleged Harm Is Self-Imposed .................................................................. 11

            3.    Defendant's Alleged "Intangible Injuries" Are Conclusory ..................... 13

            4.    Defendant's Delay Belies Any Immediate Need for an Injunction .......... 13

      C.    Defendant Cannot Show a Likelihood of Success on the § 512(f) Claim    14

            1.    The Governing Standard is Subjective Good Faith, not Objective Knowledge ................................................................................................. 14

            2.    Attorney Parties Held a Subjective Good-Faith Belief that Defendant's Use Was Not Fair ................................................................. 16

            3.    Disagreement Over Fair Use Cannot Establish § 512(f) Liability ............ 17

      D.    Defendant Cannot Show a Likelihood of Success on the Underlying Copyright Issue    18

            1.    Defendant's Use is Not Transformative Under *Warhol* ............................ 19

            2.    The Nature of the Copyrighted Work Weighs Against Fair Use .............. 20

            3.    Defendant's Use of the Entire Logo Weighs Against Fair Use ................ 21

            4.    The Market Effect Weighs Against Fair Use ........................................... 22

            5.    Defendant's Authorities are Distinguishable ........................................... 22

      E.    The Balance of Equities and Public Interest Favor RRT    25

V.    CONCLUSION .................................................................................................... 25

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adtrader, Inc. v. Google LLC*,
No. 17-cv-07082, 2018 WL 1876950 (N.D. Cal. Apr. 19, 2018) ............................................ 12

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020)................................................................................................... 12

*Andy Warhol Foundation for the Visual Arts v. Goldsmith*,
598 U.S. 503 (2023) ..................................................................................................... 3, 19, 22, 23

*Beyond Blond Prods., LLC v. Heldman*,
479 F. Supp. 3d 874 (C.D. Cal. 2020).................................................................................... 25

*Bollea v. Gawker Media, LLC*,
913 F. Supp. 2d 1325 (M.D. Fla. 2012) ................................................................................. 24

*Bouchat v. Baltimore Ravens*,
737 F.3d 932 (4th Cir. 2013)................................................................................................... 23

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
619 F.3d 301 (4th Cir. 2010).................................................................................... 20, 21, 22, 23

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ..................................................................................................... 19, 20, 22

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
68 F.3d 828 (3d Cir. 1995)...................................................................................................... 12

*Chosen Figure LLC v. Kevin Frazier Prods., Inc.*,
795 F. Supp. 3d 1232 (C.D. Cal. 2025).................................................................... 19, 21, 22

*Freedom Holdings, Inc. v. Spitzer*,
408 F.3d 112 (2d Cir. 2005)...................................................................................................... 9

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc)................................................................. 7, 9, 24, 25

*Harper & Row Publishers Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ........................................................................................................... 20, 21

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013).................................................................................................. 13

*Hill v. Xyquad, Inc.*,
939 F.2d 627 (8th Cir. 1991)...................................................................................................... 8

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

*Hollister v. Sims*,
2026 U.S. Dist. LEXIS 47709 (C.D. Cal. Jan. 30, 2026)........................................................ 17

*Hosseinzadeh v. Klein*,
276 F.Supp.3d 34 (S.D.N.Y. 2017) ........................................................................................ 17

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
796 F.2d 1148 (9th Cir. 1986)........................................................................................... 23, 24

*In re DMCA § 512(H) Subpoena to Twitter, Inc.*,
608 F. Supp. 3d 868 (N.D. Cal. 2022) .............................................................................. *passim*

*Invisible Narratives v. Next Level Apps Tec.-FZCO*,
No. 25-cv-01644, 2025 U.S. Dist. LEXIS 29888 (N.D. Cal. Feb. 19, 2025) .................... 8, 17

*Lenz v. Universal Music Group*,
815 F.3d 1145 (9th Cir. 2016)........................................................................................... *passim*

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)................................................................................................. 6, 7

*MG Premium Ltd. v. Does*,
No. 2:21-cv-08533, 2023 WL 4681368 (C.D. Cal. June 2, 2023) .......................................... 25

*Moonbug Entertainment Limited v. Babybus (Fujian) Network Technology Co.*,
No. 21-cv-06536, 2022 WL 580788 (N.D. Cal. Feb. 25, 2022) ....................................... 15, 18

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
762 F.2d 1374 (9th Cir. 1985)............................................................................................... 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)............................................................................................... 19

*Playboy Enters. v. Netscape Communs. Corp.*,
55 F. Supp. 2d 1070 (C.D. Cal. 1999)................................................................................... 14

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
391 F.3d 1000 (9th Cir. 2004)........................................................................................... 14, 15

*Savage v. Council on Am.-Islamic Rels., Inc.*,
2008 U.S. Dist. LEXIS 60545 (N.D. Cal. July 25, 2008) ...................................................... 24

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013)............................................................................................... 23

*Shaffer v. Kavarnos*,
No. 23-cv-10059, 2025 WL 2299173 (S.D.N.Y. Aug. 7, 2025)............................................. 17

*Stardock Sys., Inc. v. Reiche*,
No. C 17-07025, 2018 WL 7348858 (N.D. Cal. Dec. 27, 2018) ............................... 7, 12, 25

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
   1987 WL 6300 (N.D. Ill. Jan. 30, 1987) ................................................................ 14

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) .................................................................................... 8

*Suzhou Angela Online Game Technology Co. v. Snail Games USA, Inc.*,
   No. 22-55137, 2022 WL 5240656 (9th Cir. Oct. 6, 2022) ..................................... 7, 9

*UMG Recordings, Inc. v. Augusto*,
   558 F. Supp. 2d 1055 (C.D. Cal. 2008) .................................................................. 17

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................... 6, 13, 25

**Federal Statutes**

17 U.S.C.
   § 107............................................................................................................................ 18
   § 107(1) ................................................................................................................. 19, 20
   § 502.............................................................................................................................. 8
   § 512.............................................................................................................................. 3
   § 512(f)...................................................................................................................*passim*
   § 512(g)(2)(B) ............................................................................................................... 5
   § 512(g)(2)(C) ............................................................................................................... 5

**Other Authorities**

Marc J. Randazza, Lenz v. Universal: A Call to Reform Section 512(f) of the
   DMCA and to Strengthen Fair Use, *Vanderbilt Journal of Entertainment and
   Technology Law* 743 (2020), available at
   https://scholarship.law.vanderbilt.edu/jetlaw/vol18/iss4/3 ...................................... 16

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff/Counterclaim-Defendant Rapid Relief Team Ltd. ("RRT") and Counterclaim-Defendant Brown Rudnick LLP submit this Memorandum of Points and Authorities in opposition to Defendant/Counterclaim-Plaintiff Cheryl Bawtinheimer's Motion for Preliminary Injunction.

## I.   <u>INTRODUCTION</u>

In 2019, RRT created Cookie the Kookaburra, a professionally-designed stylized cartoon bird character ("Cookie" or the "Logo").  Since that time, it has consistently and extensively been using the Logo as a brand identifier on equipment designed to support emergency responders and communities in need, as well as standard charity assets including its website and merchandise.  The Logo is not incidental to RRT's business -- it is central to it.  RRT owns the copyright in the Logo and has secured federal registrations reflecting that ownership. Like any rights holder, RRT has both the right and the obligation to protect its intellectual property from unauthorized use.  Defendant, without permission, incorporated the Logo into multiple videos published on her YouTube channel. These uses were not necessary to any commentary about RRT or its Logo.  Instead, Defendant repeatedly displayed the copyrighted work in a manner that appropriated its expressive value while adding nothing meaningfully new.  Upon discovering this unauthorized use, RRT took measured and proportionate action: it submitted DMCA takedown requests for only five unique videos—a small subset of Defendant's main channel, which contains well over 150 videos.

Now, Defendant asks this Court for extraordinary relief: a mandatory preliminary injunction that would compel RRT to retract its takedown requests and effectively bar RRT from protecting its intellectual property rights going forward. That request turns the purpose of preliminary relief on its head. Mandatory injunctions are reserved for truly exceptional circumstances. This is not one of them.

This Court should deny Defendant's motion at least for the following reasons:

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

**First**, and fatal to a motion for injunctive relief, Defendant cannot demonstrate irreparable harm. The record shows that Defendant remains free to publish content on her YouTube channel and that she continues to do so. The challenged takedowns affect only five distinct videos out of a vast library, and do not threaten her ability to speak publicly through her channel.  Indeed, any alleged harm is entirely self-inflicted. RRT expressly informed Defendant that it would not object to the reposting of the videos if the infringing content—comprising only a small fraction of each video, in some cases less than one percent of runtime—were removed. Defendant refused. Rather than make minimal edits to eliminate the infringing material, she chose to keep the videos offline and now seeks to leverage that intransigence into a claim of irreparable injury. Equity does not reward such strategic inaction.

**Second**, Defendant's lack of urgency further undermines her position. Despite claiming ongoing and irreparable harm, she waited almost four months – 118 days to be exact – from the first takedown before seeking injunctive relief. That delay is fundamentally inconsistent with the notion that immediate intervention is necessary to prevent imminent injury.

**Third**, Defendant cannot establish a likelihood of success for either of its two asserted counterclaims, as neither is supported by law or the underlying facts:

Defendant's first counterclaim seeking damages under 17 U.S.C. § 512(f) fails at the outset because Defendant cannot show, as required under Ninth Circuit binding precedent in *Lenz v. Universal Music Group*, 815 F.3d 1145 (9th Cir. 2016), that RRT lacked a *subjective* good faith belief in its copyright infringement claim when it submitted its takedown requests.  Contrary to Defendant's unsupported and false allegations, RRT considered whether Defendant's depictions of the Logo in the videos were fair use and held a subjective good faith belief that they were not.  That alone ends the § 512(f) inquiry.

Her declaratory judgment claim fares no better. Defendant's use of the Logo is not transformative, does not serve a distinct expressive purpose, and relies on repeated,

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

unnecessary display of the entirety of the copyrighted work. Indeed, the Logo is used in a manner that mirrors its core function—as a recognizable identifier of RRT—further underscoring, especially post-*Andy Warhol Foundation for the Visual Arts v. Goldsmith*, 598 U.S. 503 (2023), the absence of any legitimate fair use defense.

In short, Defendant seeks to manufacture urgency that does not exist, and avoid curing alleged harm despite her ability to do so, in an attempt to enlist this Court into granting extraordinary relief that would strip a rights holder of its ability to protect its own intellectual property. The law does not permit that result, and the facts do not justify it. The Court should deny Defendant's motion in its entirety.

## II.   <u>FACTUAL BACKGROUND</u>

Cookie the Kookaburra is a stylized cartoon bird character that RRT has used as a logo on its equipment designed to support emergency responders and communities in need, including but not limited to semi-trailers used to transport all-terrain forklifts, marquees which provide shelter to volunteers preparing food and beverages, BBQ and coffee trailers,  and on its standard charity assets including its website and merchandise for about seven years.  Cookie was first published as a foreign copyrighted work on social media and then launched on the global RRT website in May 2019. ECF No. 7 at ¶4. RRT owns the copyright to Cookie's image, and depictions of Cookie in different postures[1] are registered with the U.S. Copyright Office as VA0002472486 and VA000247487.[2] Declaration of D. Rozansky ("Rozansky Decl."), Ex. 1.

Defendant has published hundreds of videos to her *Get a Life Podcast* and *Rapid Relief Team – Exposed* YouTube channels.[3]  On October 28, 2025, after discovering

[1] The Logo is registered in two different postures because it also appears in motion and in various postures on RRT's website and social media.

[2] Contrary to Defendant's assertion, the Logo is not "clip art" nor "unregistered." Motion at 6.

[3] Episode No. 167 was published on April 10, 2026, on the Get a Life Podcast page. Rozansky Decl., Ex. 2.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

that certain of Defendant's videos included imagery of the Logo, RRT's counsel submitted two DMCA takedown requests to YouTube.  Consistent with the requirements of the Digital Millenium Copyright Act, 17 U.S.C. § 512, YouTube has established policies for reviewing and implementing takedown requests.  If YouTube determines after a review that a takedown request appears valid, YouTube will remove the entire video.  Rozansky Decl., Ex. 3.  YouTube, determining that the requests appeared valid, took down the videos. RRT subsequently identified other videos on Defendant's YouTube channels that depicted RRT's Logo and submitted additional takedown requests.  In all, RRT has requested removal of the following five videos on Defendant's channels, narrowly tailoring the requests to the portions of each video infringing upon RRT's rights:[4]

| Video | Channel(s) | Video Length | Infringement Duration | DMCA Takedown Requests and Video Status |
|---|---|---|---|---|
| "Lindy"[5] | Get a Life Podcast; Rapid Relief Team - Exposed | 5:06 | 15 seconds | - Submitted for Get a Life Podcast channel on Oct. 28, 2025 (video removed Dec. 5, 2025)<br>- Submitted for Rapid Relief Team – Exposed channel Jan. 28, 2026 (video removed on or about Jan. 28, 2026) |
| "Divided at Christmas" | Get a Life Podcast | 3:31 | 17 seconds | - Submitted on Oct. 28, 2025 (video removed Dec. 12, 2025) |

---

[4] Each of the takedown requests identified the infringing use of the Logo with precise time stamps. Contrary to Defendant's suggestion, RRT did not include merely incidental, isolated reproductions of the Logo.  Motion 8-9.  Rather, RRT included portions in which there were many instances of the Logo, or long consecutive stretches in which it was displayed.

[5] This video was uploaded to the Get a Life Podcast channel under the title "Lindy expresses her concern regarding the Plymouth Brethren Christian Church's RRT charity" and separately uploaded to the Rapid Relief Team – Exposed channel under the title "Plymouth Brethren Christian Church: Former Member Exposes Rapid Relief Team."

4                                    4:25-cv-10864-JST
OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

| Episode No. 144 | Get a Life Podcast<br><br>Rapid Relief Team – Exposed | 2:00:00 | 7 minutes, 31 seconds | - Submitted for Get a Life Podcast on Jan. 28, 2026 (video removed on or about Jan. 28, 2026)<br>- Submitted for Rapid Relief Team – Exposed on Jan. 30, 2026 (video removed on or about Jan. 30, 2026) |
|---|---|---|---|---|
| Episode No. 145 | Get a Life Podcast; Rapid Relief Team – Exposed | 1:41:23 | 20 seconds | Submitted on Jan. 28, 2026 to both channels. Following counternotification, the version on Get a Life Podcast is currently available while Rapid Relief Team – Exposed is not. |
| Chapter 2 Part 1 | Rapid Relief Team - Exposed | 9:51 | 6 seconds | Submitted on Jan. 28, 2026 (video removed on or about Jan. 28, 2026) |

ECF No. 7 at ¶¶24-34; *see also* ECF No. 26, Exs. 15-16, 20-22.

After Defendant submitted counter notifications to YouTube to challenge RRT's first two takedown requests, RRT commenced this lawsuit against Defendant for copyright infringement on December 19, 2025 (ECF No. 1), and amended the complaint on January 30, 2026, to add infringement claims corresponding to the later takedown requests and Defendant's subsequent corresponding counter notifications (ECF No. 7). *See* 17 U.S.C. § 512(g)(2)(B), (C). YouTube, not RRT, concluded that the videos should be taken down. YouTube confirmed to Defendant that it had "located and processed" the counter notification, and the video "was removed as the result of a complete and facially valid takedown notice submitted by [RRT]." ECF No. 26-17 at 4. Contrary to Defendant's assertion, YouTube *did not* find that any video "did not infringe on RRT's copyright." Motion at 8, 9. Defendant submitted counter notifications for each of the videos identified above for the Get a Life Podcast channel but did not do so for the same videos on the Rapid Relief Team – Exposed channel.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

Prior to serving the complaint, RRT informed Defendant numerous times that she was free to repost the videos if she first removed the infringing content. For example, on March 13, 2026, RRT's counsel stated to Defendant that "if you edit and repost the videos without the content that infringes RRT's copyright, and we formalize this in writing, RRT will not challenge the edited videos without the Logo, will withdraw the litigation, will notify YouTube that the matter has been settled, and will not pursue costs." Declaration of Michael R. Graif ("Graif Decl."), Ex. 1 at 2. Even though the infringing content comprised only a small proportion of each video, Defendant refused to remove the infringing content, opting instead to keep the entirety of each of the videos offline.[6] Graif Decl., Ex. 1 at 1.

## III.    LEGAL STANDARD

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the movant "must establish [(1)] that [it] is likely to succeed on the merits, [(2)] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in [its] favor, and [(4)] that an injunction is in the public interest." *Id.* at 20.

## IV.    ARGUMENT

### A.    Defendant Seeks a Mandatory Injunction, Requiring a Heightened Burden of Proof

A preliminary injunction can take two forms: a prohibitory injunction or a mandatory injunction. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878-79 (9th Cir. 2009). "A prohibitory injunction prohibits a party from

---

[6] As set forth in the table above, all videos are still removed by YouTube, with the exception of the version of Episode No. 145 on the Get a Life Podcast channel, which was put back up by YouTube after the submission of the counternotification, in contradiction with its policy regarding videos subject to a pending lawsuit. ECF No. 26, Ex. 19 at 2 ("While legal action is pending, the content at issue will not be reinstated to YouTube.").

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

taking action and preserves the status quo pending a determination of the action on the merits." *Id.* (quotation marks omitted).  In contrast, "[a] mandatory injunction orders a responsible party to take action" and "goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored.'" *Id.* at 879 (quotation marks and citations omitted). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quotation marks and citation omitted).  If a party "seeks a mandatory injunction, she must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

Defendant plainly seeks a mandatory injunction.  The Motion expressly requests an order "requiring Defendants to withdraw all DMCA requests sent to YouTube regarding Bawtinheimer's videos … and … requiring Counterclaim-Defendants to seek approval from this Court to send any further DMCA notices regarding Bawtinheimer's videos."  Motion at 1.

Defendant's arguments to the contrary are unavailing and have been squarely rejected by courts in the Ninth Circuit.  Defendant argues that its proposed preliminary injunction "will merely restore the status quo by undoing the *de facto* injunction they obtained by abusing the DMCA takedown process."  Motion at 22.  To support that argument, Defendant argues that RRT could not itself seek an injunction to take down the videos yet obtained "a *de facto* prior restraint injunction" by submitting takedown requests to YouTube.  *Id.*

Defendant's "*de facto* prior restraint injunction" argument is contrary to the court holdings in this Circuit that flatly reject the conceptualization of a pre-suit DMCA request as an injunction.  Indeed, in *Suzhou Angela Online Game Technology Co. v. Snail Games USA, Inc.*, the Ninth Circuit held that a motion for a preliminary injunction that would require a copyright holder to retract a DMCA takedown request is a motion for a mandatory injunction.  No. 22-55137, 2022 WL 5240656, at *2 (9th

Cir. Oct. 6, 2022) ("Because [plaintiff's] requested injunction would require [defendants] to 'take the affirmative action' of retracting the [takedown] Letter, the district court properly concluded that [plaintiff] sought a mandatory injunction." (quoting *Garcia*, 786 F.3d at 940)); *see also Stardock Sys., Inc. v. Reiche*, No. C 17-07025, 2018 WL 7348858, at *8-9 (N.D. Cal. Dec. 27, 2018) ("Plaintiff's argument is based on the flawed premise that the issuance of a notice of infringement under the DMCA is the equivalent of an injunction requiring the removal of allegedly infringement (sic.) material. It is not.") (internal quotation and emphasis omitted). Contrary to Defendant's suggestion, compelling RRT to take action would not be preserving the status quo. *Contra* Motion at 21-22.

In addition, Defendant incorrectly argues that the only relief RRT can receive for its copyright infringement claim is "monetary damages, which is insufficient to prove irreparable harm." Motion at 21. That is wrong: under the Copyright Act, 17 U.S.C. § 502, injunctive relief is an available remedy to enjoin further unlawful use. And, indeed, Defendant ignores that RRT's complaint seeks, *inter alia*, injunctive relief. ECF No. 7 at 13.

Defendant's cited case law is also inapposite. Unlike here, *Stuhlbarg* concerned the importation of physical goods (*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 838 (9th Cir. 2001)), and *Hill* concerned a joint business venture that an injunction dissolved (*Hill v. Xyquad, Inc.*, 939 F.2d 627, 631 (8th Cir. 1991)). No such urgency of injunctive relief exists here; nor could it, considering that this case concerns only whether Defendant is or is not allowed to make gratuitous use of RRT's copyright-protected Logo in certain of her online videos. In addition, *Invisible Narratives* involved a bad actor fraudulently obtaining intellectual property rights and using them to presumably try to profit from the popularity of the other party's content – including by sending an email requiring negotiation within *one* day before proceeding with improper takedown notices to attempt to get their channel taken down. *Invisible Narratives v. Next Level Apps Tec.-FZCO*, No. 25-cv-01644, 2025 U.S. Dist.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

LEXIS 29888, at *3-4 (N.D. Cal. Feb. 19, 2025). Far from making such threats, RRT has instead sought appropriate protection for its intellectual property and repeatedly offered Defendant a reasonable path forward that protected both RRT's intellectual property rights and Defendant's ability to express herself online.

Because Defendant's Motion seeks to alter the status quo and force RRT to take action, the Motion seeks a mandatory injunction that requires Defendant to satisfy a heightened standard and "should be denied unless the movant can 'establish that the law and facts clearly favor its position, not simply that it is likely to succeed.'" *Suzhou Angela*, 2022 WL 5240656, at *2 (quoting *Garcia*, 786 F.3d at 940).

## B.    Defendant Cannot Show Irreparable Harm

Defendant is not entitled to a preliminary injunction, let alone a mandatory preliminary injunction, because she cannot establish irreparable harm, much less meet the heightened standard of "extreme or very serious damage [that] will result." Defendant alleges the following "harms": (1) removal of her videos "limited her ability to spread public awareness of RRT and its activities and to foster support for a community of outcasts"; and (2) she "fears that any future videos regarding RRT will be subjected" to further takedowns. Motion at 12, 21-22. These assertions are unsupported and belied by the record.

As an initial matter, Defendant's § 512(f) counterclaim cannot provide the basis for an injunction because the only statutory remedy for a § 512(f) claim is "damages, including costs and attorneys' fees[.]" 17 U.S.C. § 512(f). As Defendant concedes, "monetary damages" relief "is insufficient to prove irreparable harm." Motion at 21. There is no harm possible in an adjudication of Defendant's § 512(f) claim past the preliminary injunction stage. *See, e.g., Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) ("At the preliminary injunction state, the only cognizable harms are those that *cannot be remedied at the end of trial if the movant were to prevail*." (emphasis in original)). This alone should end the § 512(f) inquiry for purposes of Defendant's Motion. Instead, any harms alleged by Defendant must relate

9                                                    4:25-cv-10864-JST

to her counterclaim for declaratory relief on the issue of whether her use of RRT's Logo constitutes copyright infringement or fair use.

Defendant fails to show any connection between the purported harms and her ability to use RRT's Logo. RRT's takedown requests for just a few of the hundreds of videos Defendant has published, due to their unauthorized, non-transformative use of the Logo, does not in any way hinder Defendant's ability to pursue her purported objective, i.e., spreading public awareness and fostering support. Nor does it create any reasonable fear of future harm. As reflected by the hundreds of Defendant's videos that RRT has not sought to take down, Defendant's videos simply do not need to show the Logo to pursue this objective. Indeed, Defendant's purported "fears" regarding future videos are directly contradicted by RRT's express assurances that it would not object to her re-posting her videos if the infringing material were removed. Any harm stemming from Defendant's refusal to repost her videos with the Logo removed is thus entirely self-inflicted, not irreparable.

Further refuting Defendant's position that the alleged harm is irreparable, Defendant demonstrating a lack of urgency by bringing her Motion several months after she became aware of the initial Complaint, which was filed in December, and the Amended Complaint, which was filed in January, as well as nearly four months since the initial takedown notice.

1.    Defendant Fails to Show Harm Caused by Not Using RRT's Logo

Defendant disingenuously asserts that RRT has "limited her ability to spread public awareness" and "to foster support." Motion at 21. Defendant does not even attempt to show that she needs to show RRT's Logo to accomplish those goals. Defendant's videos do not provide commentary on RRT's mascot. As demonstrated by Defendant's vast library of videos that concern RRT and the PBCC but do not show or prominently feature RRT's Logo, Defendant simply does not need to show Cookie the Kookaburra in her videos to pursue her stated goals. RRT submitted takedown notices regarding just five distinct videos based on their use of the Logo, and

10                                              4:25-cv-10864-JST

Defendant has continued to post videos to her YouTube channels. Defendant also has not identified any harm that would result from reposting those videos with the objectionable content removed.

In sum, the wholesale reproduction of RRT's Logo in the handful of Defendant's videos subject to RRT's takedown requests does not spread public awareness or foster support for Defendant's cause, and the removal of such imagery from her videos would not in any way stifle her message.

2.      Defendant Is Free, and Has Continued, to Publish Videos, and Her Alleged Harm Is Self-Imposed

Notwithstanding Defendant's allegations of irreparable harm, it is simply beyond dispute that Defendant remains free to publish videos critical of RRT to spread public awareness and foster support for her cause. Defendant does not show—and indeed cannot show—that RRT is preventing her from publishing videos about RRT. RRT has requested the removal of a mere handful of videos in Defendant's vast video library on her channels, limiting its objections to videos that gratuitously feature RRT's Logo for a short period of time.  RRT has also explicitly stated in correspondence that should Defendant remove the Logo from the videos, RRT would not object to her re-uploading them. Graif Decl., Ex. 1 at 2, 3. RRT is not preventing Defendant from publishing.

Defendant attempts to concoct a sense of urgency by speculating, disingenuously, that RRT will issue additional takedowns if she reuploads the videos without the inclusion of the Logo (*contra* Motion at 21-22), despite RRT's written offer of assurances to the contrary. Graif Decl., Ex. 1 at 2, 3. In fact, Defendant has continued to publish content on the Get a Life Podcast channel throughout the pendency of this litigation, including at least as recently as on or around April 10, 2026. Rozansky Decl, Ex. 2.  Given these circumstances, it is preposterous for Defendant to assert that she has a "reasonable fear that Counterclaim-Defendants will continue to [submit takedown requests] for *any* video she posts about RRT or the

Plymouth Brethren Christian Church ('PBCC'), regardless of whether there is any good-faith basis for claiming such videos constitute copyright infringement." Motion at 21-22. Any such fear is patently unreasonable, particularly in view of the fact that RRT submitted takedown requests for a mere handful of the hundreds of Defendants' online videos, and expressly offered to allow Defendant to re-post those handful of videos if she just removed the infringing content. That Defendant voluntarily decided to create this controversy by refusing to edit her videos to remove the infringing material is a problem of her own making.

Such harm of one's own making cannot be irreparable. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("That the government's asserted harm is largely self-inflicted severely undermines its claim for equitable relief. Self-inflicted wounds are not irreparable injury." (internal quotation marks and citations omitted)); *Stardock*, 2018 WL 7348858, at *11 ("If the harm complained of is self-inflicted, it does not qualify as irreparable." (quoting *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)); *Adtrader, Inc. v. Google LLC*, No. 17-cv-07082, 2018 WL 1876950, at *4 (N.D. Cal. Apr. 19, 2018) ("Harm does not constitute irreparable injury if it is self-inflicted.").

*Stardock* is particularly instructive. There, the plaintiff had knowledge of defendants' copyright claims but proceeded to develop potentially infringing material without resolving the underlying intellectual property ownership issues and then sought a preliminary injunction to try to prohibit the defendants from issuing additional takedown notices. *Stardock*, 2018 WL 7348858, at *11. The court denied the injunction, stating that it was "disinclined to extricate Plaintiff from a peril of his own making." *Id.* Here, too, Defendant has been aware of the precise nature of RRT's copyright claims since October 2025, and her decision not to upload the videos without the use of the Logo while the dispute over its potential to be fair use was ongoing has put her in a predicament completely of her own making and "severely undermines [her] claim for equitable relief." *See Al Otro Lado*, 952 F.3d at 1008.

### 3.    Defendant's Alleged "Intangible Injuries" Are Conclusory

Defendant also asserts "intangible injuries like reputational harm, loss of online following, stifling of her speech rights, impairment of her right to associate with and help others, and account termination," but these are all unsupported and illusory. Motion at 21.  At best, Defendant's alleged "intangible injuries" are mere categories of harms she may believe she could possibly suffer—they are "grounded in platitudes rather than evidence" and therefore insufficient to support injunctive relief.  *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).  After all, "[t]hose seeking injunctive relief must **proffer evidence** sufficient to establish a likelihood of irreparable harm."  *Id.* at 1251 (emphasis added).  As the Supreme Court has held: "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter,* 555 U.S. at 22 (emphasis added).

Defendant fails to provide factual support for her alleged intangible injuries. Briefly: (1) Defendant has not provided any evidence of reputational harm caused by an inability to display the Logo in five of her videos; (2) Defendant has not shown any diminishment in her online following at all, let alone as a result of RRT's takedown requests; (3) Defendant has not shown stifling of her speech rights, particularly given Defendant's lack of commentary on RRT's copyrighted Logo in her videos; (4) Defendant still maintains active social media accounts across multiple additional platforms from which she can "associate with and help others"; and (5) Defendant's YouTube account is not terminated.  Defendant thus has not provided record evidence that she has actually suffered or is likely to suffer any of these alleged intangible harms –and, even if she had, they would be harms of her own making and therefore not irreparable.

### 4.    Defendant's Delay Belies Any Immediate Need for an Injunction

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

Defendant's current assertion of urgency is also belied by her own actions, including her unjustifiable delay in seeking injunctive relief. Since RRT filed its original Complaint in December, Defendant has created additional videos, as set forth above. Defendant has also repeatedly avoided service of the Amended Complaint. This includes, in order, refusing email service when it was offered, not answering her door during three separate visits from a process server, and refusing to accept service via registered mail. *See* Affidavit of Attempted Service (Amanda Fong); Affidavit of Attempted Service (Ashley Biena). Only several months later—118 days from the first takedown notice—did she finally decide that she was being harmed. This delay "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also, e.g. Playboy Enters. v. Netscape Communs. Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) (finding that five-month delay in filing motion for preliminary injunction demonstrated lack of any irreparable harm); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30, 1987) (finding that "the fact that [movant] waited three months [to file a motion] indicates a lack of need for the extraordinary remedy of a preliminary injunction."); 5 Nimmer on Copyright § 14.06[A][3][c][ii] (noting unreasonable delay can defeat a presumption of irreparable injury and the length of time "need not be great").

**C.    Defendant Cannot Show a Likelihood of Success on the § 512(f) Claim**

Defendant's counterclaim under 17 U.S.C. § 512(f) cannot provide the basis for an injunction because the only statutory remedy is damages. But even if it could, under the controlling law of this Circuit set forth in *Lenz* and *Rossi*, Defendant cannot demonstrate a likelihood of success in connection with her § 512(f) counterclaim. *Lenz v. Universal Music Group*, 815 F.3d 1145 (9th Cir. 2016); *Rossi v. Motion Picture Ass'n of Am. Inc.,* 391 F.3d 1000 (9th Cir. 2004).

1.    The Governing Standard is Subjective Good Faith, not Objective

14                                    4:25-cv-10864-JST
OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

Knowledge

Defendant's § 512(f) claim rests entirely on an incorrect statement of law, *i.e.*, that Brown Rudnick, Michael Graif, and Katy-Jade Church ("Attorney Parties" and together with RRT, "Counter-Defendants") *objectively* should have known that Defendant's use of the Logo in her videos was fair use. This blatantly ignores the court's holdings in *Lenz* and *Rossi*: "Though Lenz argues Universal should have known the video qualifies for fair use as a matter of law, we have already decided a copyright holder need only form a subjective good faith belief that a use is not authorized." *Lenz*, 815 F.3d at 1153 (citing *Rossi,* 391 F.3d at 1004). The *Lenz* court continued: "In *Rossi,* we explicitly held that 'the "good faith belief" requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than objective standard,' and we observed that 'Congress understands this distinction.'" *Id.* at 1153-54 (citing *Rossi*, 391 F.3d at 1004).

Indeed, the court in *Rossi* further observed that "Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation." *Rossi*, 391 F.3d at 1004-05. A copyright owner therefore "cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Id.* "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Id.* The court in *Lenz* crystallized this holding specifically in the fair use context as well: "If, however, a copyright holder forms a subjective *good faith* belief the allegedly infringing material does not constitute fair use, we are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion." *Lenz*, 815 F.3d at 1154 (emphasis in original).

As recently set forth in this District, "to state a § 512(f) claim, Defendant must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug*

15                                    4:25-cv-10864-JST

*Entertainment Limited v. Babybus (Fujian) Network Technology Co.*, No. 21-cv-06536, 2022 WL 580788, at *7 (N.D. Cal. Feb. 25, 2022) (dismissing defendant's §512(f) counterclaim due to a failure to allege sufficient facts demonstrating a material misrepresentation or subjective bad faith).  This subjective standard is intended to foreclose precisely the circumstances of Defendant's Motion: an infringer seeking damages from a copyright owner based on a disagreement on the merits of an underlying copyright infringement claim.

Defendant can claim that "anyone" would agree with her fair use position, but that objective standard is simply not how courts in this Circuit assess a § 512(f) claim. Indeed, Defendant's counsel *knows* this because he wrote an article calling for the reform of Section 512(f) following the decision in *Lenz*. As he wrote in the abstract: "Currently, the DMCA issuer only has to prove he considered fair use before issuing a takedown notice, but faces no liability for actually taking action against fair use." Marc J. Randazza, Lenz v. Universal: A Call to Reform Section 512(f) of the DMCA and to Strengthen Fair Use, *Vanderbilt Journal of Entertainment and Technology Law* 743 (2020), available at https://scholarship.law.vanderbilt.edu/jetlaw/vol18/iss4/3. Defendant's statement, for example, that "[a]ttorneys should be charged with some degree of constructive knowledge of fair use" is therefore reflective of Defendant's counsel's desire for the law to change, *not* the state of the law.

> 2.    Attorney Parties Held a Subjective Good-Faith Belief that Defendant's Use Was Not Fair

Attorney Parties undisputedly held a subjective good-faith belief that the takedowns issued on behalf of RRT were valid. Graif Decl. ¶8; Declaration of Katy-Jade Church  ("Church Decl.") ¶6.[7]  Both Graif and Church considered the possibility

---

[7] Neither Mr. Graif nor Ms. Church have been served with a Summons and Counterclaims and by submission of Declarations in Support of Opposition to Motion for Preliminary Injunction make no appearance as a party in this case, and each specifically preserve all objections to personal jurisdiction.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

that these uses were fair before determining that they were not. Graif Decl. ¶8; Church Decl. ¶6. The Motion does not offer, ***nor could it***, a shred of evidence to the contrary, instead relying on speculation based on representation by Brown Rudnick in a different case in Massachusetts and Mr. Graif's public biography setting forth his years of experience with copyright law. Motion at 19-20. Further, for the reasons set forth below, the position taken by the Counter-Defendants is a correct interpretation of fair use, particularly given the current state of the law in connection with fair use (i.e., post-*Warhol*).  At minimum, it easily satisfies the subjective, good faith belief test.

### 3.    Disagreement Over Fair Use Cannot Establish § 512(f) Liability

As set forth in the previous sections, *Lenz* ends the inquiry where, as here, Defendant cannot show that Counter-Defendants did not have a subjective good faith belief regarding their copyright infringement claims. To that point, a reasonable disagreement regarding the applicability of fair use cannot establish § 512(f) liability. Indeed, courts routinely reject § 512(f) claims where fair use is debatable. *See e.g., Hosseinzadeh v. Klein*, 276 F.Supp.3d 34, 47 (S.D.N.Y. 2017) (dismissing a § 512(f) claim because defendants demonstrated a subjective good faith belief regarding fair use and stating that even if the court disagreed ultimately with that belief, it would still dismiss the claim); *Shaffer v. Kavarnos*, No. 23-cv-10059, 2025 WL 2299173, at *4 (S.D.N.Y. Aug. 7, 2025) (finding Plaintiff did not provide sufficient evidence to sustain a § 512(f) claim despite arguing that the content was "plainly fair use").

Tellingly, none of the authority cited by Defendant in discussing § 512(f) liability addresses a fair use defense. *See* Motion at 19. In *Hollister*, for instance, the counter-defendants submitted takedown notices in connection with material connected to *counterclaimant's* prior registered works. *Hollister v. Sims*, 2026 U.S. Dist. LEXIS 47709, at *8-9 (C.D. Cal. Jan. 30, 2026). *Invisible Narratives* is also plainly distinguishable, involving a company fraudulently obtaining copyright registrations and then unlawfully submitting takedown notices claiming copyright rights it plainly did not have against the rightful owner. *Invisible Narratives*, 2025 U.S. Dist. LEXIS

29888, at *3.  *UMG* involved a complicated licensing scheme with unclear ownership. *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055 (C.D. Cal. 2008).  Unlike those outlandish fact patterns, this case involves, at minimum, a reasonable dispute over fair use. That fact alone defeats any claim of knowing misrepresentation.

Defendant's pages of spurious attacks on the PBCC and RRT in the Motion, marshaled in an attempt to demonstrate an improper motive for these takedowns, are also a red herring. Motion at 2-5.  Even assuming, *arguendo*, such a motive, courts do not look to the reasons for the takedowns – only whether they are submitted based on a good faith belief that the content infringes on the owner's rights. *Moonbug*, 2022 WL 580788, at *10 ("§ 512(f) protects against bad-faith misrepresentations of copyright infringement *not* against a desire to see negative downstream consequences from properly-filed claims of copyright infringement.").

Defendant cannot demonstrate a likelihood of success on her § 512(f) claim and the Motion should be denied as to the claim on that basis alone.

**D.      Defendant Cannot Show a Likelihood of Success on the Underlying Copyright Issue**

Defendant also cannot show a likelihood of success on the underlying copyright claim because her use could not be considered fair use.  "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include— (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. §107.

All four of these factors militate against finding fair use under these circumstances. Defendant used the entire Logo, not in a transformative manner, but exactly in the manner that RRT uses it – to identify RRT. Although the videos at issue are critical of RRT, they do not comment on or criticize the Logo itself at any point.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

The copyrighted work is a stylized depiction of a bird, created by graphic design professionals, and therefore its nature is inherently creative. ECF No. 7 ¶12. And, because Defendant used the entire Logo in a non-transformative manner, the market harm is plain. As further detailed below, Defendant cannot show that she is likely to succeed on her fair use claim.

1. Defendant's Use is Not Transformative Under *Warhol*

The first fair use factor evaluates the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes. 17 U.S.C. §107(1). "The most important inquiry under this factor is whether and to what extent the new work is 'transformative.'" *Chosen Figure LLC v. Kevin Frazier Prods., Inc.*, 795 F. Supp. 3d 1232, 1247-48 (C.D. Cal. 2025) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). "A transformative use is one that 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message' to the original work, transforming the original work into a 'new creation.' *Id.* (quoting *Campbell*, 510 U.S. at 577; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007)).

Under United States Supreme Court precedent, such identity of purpose without justification for its secondary use cuts strongly against a finding of fair use. *Warhol*, 598 U.S. at 529. The landmark 2023 *Warhol* decision significantly narrowed the scope of what use could be considered "transformative" and emphasized the importance of only copying that which is "reasonably necessary" to achieve the purpose of the secondary work. *Id.* at 533. The Supreme Court found that because both the original and secondary uses of the copyrighted work – despite being aesthetically distinguishable – were "portraits of Prince used in magazines to illustrate stories about Prince," they shared an identity of purpose that militated against a finding of fair use. *Id.* at 536. Here, the purpose of Defendant's use of the Logo is identical to RRT's use of the work: to identify RRT. Indeed, Defendant concedes that she was using the Logo "to identify RRT." Motion at 15. At no point in these videos does Defendant even

19

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

*mention* the Logo itself. She mentions RRT, and criticizes RRT, but RRT is not seeking to have use of "RRT" taken down – only the use of its creative Logo, Cookie, which is completely irrelevant to the criticisms at issue. Defendant's wholesale reproduction of the Logo without any commentary on it eliminates any argument that it is reasonably necessary to include it in her criticism. This is not a "bad faith desperate argument," *contra* Motion at 16, but a sensible one, and it is dispositive of Defendant's Motion (and her ill-advised counterclaims).    The Logo is reproduced in its entirety for the same purpose for which RRT uses it.  Defendant has not pleaded any other purpose.

The other aspect of this first factor evaluates whether the use is commercial or for non-profit educational purposes. 17 U.S.C. §107(1). Although she claims her intention is criticism and public awareness, Defendant concedes her videos are monetized. Motion at 15. Defendant's focus need not be exclusively on monetary gain for the use to be considered commercial. *Bouchat v. Baltimore Ravens Ltd. P'ship,* 619 F.3d 301, 311 (4th Cir. 2010) ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." (quoting *Harper & Row Publishers Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985)). Defendant's use may have multiple purposes, but one of those purposes is to monetize her videos. Motion at 12. This fact cannot be ignored. Even partial commercial use tilts this factor further against fair use particularly where, as here, the use is non-transformative. *Id.* ("Because defendants' use of Bouchat's logo is non-transformative, we have no hesitation in concluding that the commercial nature of the use weighs against a finding of fair use." (citing *Campbell*, 510 U.S. at 579)).

2.    <u>The Nature of the Copyrighted Work Weighs Against Fair Use</u>

The second fair use factor also favors RRT. The Logo, a stylized professionally-designed image designed to evoke a native Australian bird as the "mascot" of a charitable enterprise, is artistic in nature. The role the image plays as a source identifier does not make it less artistic or unique. *See Bouchat*, 619 F.3d at 311 (finding the

Flying B logo, used to identify the Baltimore Ravens, a creative work, which resolves that factor in favor of a copyright infringement plaintiff and against finding fair use). This factor weighs against fair use.

### 3.    Defendant's Use of the Entire Logo Weighs Against Fair Use

The third factor, the "amount and substantiality" used of the Logo plainly favors RRT. Defendant does not dispute that the videos use the Logo in its entirety. "Unless the use is transformative, the use of a copyrighted work in its entirety will normally weigh against a finding of fair use." *Bouchat,* 619 F. 3d at 311; *see also Chosen Figure*, 795 F.Supp.3d at 1351 ("While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use.") (quoting *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003)). As set forth above, Defendant's use of the Logo is not transformative, and therefore the use of the entire Logo similarly weighs against finding fair use.

Defendant's arguments to the contrary are meritless. Although Defendant accurately points out that her uses of the entire Logo each make up a relatively small proportion of the full videos, this fact underscores the ease with which she could edit the videos to remove the infringing uses. It does not bear on the inquiry under this fair use factor. Even displaying the full copyrighted work for a minimal amount of time is a violation, because "[w]hat matters is the amount of the copyrighted work used." *Bouchat*, 619 F.3d at 312 (further explaining "a taking may not be excused merely because it is insubstantial with respect to the *infringing* work," for "no plagiarist can excuse the wrong by showing how much of his work he did not pirate.") (quoting *Harper & Row,* 471 U.S. at 565 (quotations omitted) (emphasis in original)).

Defendant argues that the only way she could criticize RRT is to use the Logo in its entirety (Motion at 17), but this is nonsensical, as her criticism *never involves* the Cookie Logo, nor is the Cookie Logo the only way to identify RRT. Defendant has released scores of other videos criticizing RRT that demonstrate this fact. Defendant did not need to use the Logo *at all*, let alone in its entirety for stretches of time, to

identify RRT previously. It is only now, when RRT seeks to prevent her use of it, that she claims (falsely) that she is being silenced.

### 4.    The Market Effect Weighs Against Fair Use

The fourth factor, regarding the effect on the market of the use, weighs against fair use as well. This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal citation omitted). Setting the precedent requested by Defendant that anyone may freely use the Logo if they in some way comment upon or criticize RRT would lead to such an adverse result. Furthermore, "[w]hen a use is not transformative, market substitution is more likely." *Bouchat*, 619 F.3d at 313 (citing *Campbell,* 510 U.S. at 591); *Chosen Figure*, 795 F. Supp. 3d at 1251. Defendant is using the Logo for the same purpose – to identify RRT – and so her use can be considered market substitution, which causes market harm to the Logo.

### 5.    Defendant's Authorities are Distinguishable

The authorities cited by Defendant in support of her fair use argument are distinguishable. As a preliminary matter, every single one was decided prior to the Court's significant decision in *Warhol* regarding the nature of transformative use and how it is assessed, including the weighing of the similarity of the purposes of the first and secondary use, whether the use is reasonably necessary to achieve the purpose of the secondary work, and whether the secondary use is commercial in nature. The authorities are also plainly distinguishable individually on their facts.

Defendant's references to *Bouchat*[8] conveniently omit the context of that series of cases. The first *Bouchat* decision found copyright infringement of the Flying B logo

---

[8] There are two different *Bouchat* decisions, both in the Fourth Circuit, referenced in this brief. The cases analyze different uses of the Flying B logo in different contexts.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

by the Baltimore Ravens, who then voluntarily adopted a new logo. *Bouchat v. Baltimore Ravens*, 737 F.3d 932, 935 (4th Cir. 2013). The copyright owner then filed a series of subsequent cases in which he tried to stop exceptionally insubstantial past usage in various videos and displays. In "Bouchat IV," the Fourth Circuit found the footage of the logo in season highlight films and in a short video shown during Ravens home games was not fair use. *Id.* at 936. By the *Bouchat* decision cited by Defendant, the sixth of these cases, the uses at issue were far less significant. The Flying B logo was used incidentally, appearing on the Ravens' players' helmets or uniforms for fractions of a second and for the specific, historical purpose of showing past plays by the Ravens in the uniforms displaying that logo. *Id.* at 940 (describing the use as "exceptionally insubstantial" and "fleeting"). Here, the Logo is displayed for the same purpose – not a historical, or even a critical one, but merely to identify RRT – and for more than fractions of a second at a time. This line of cases, rather than supporting Defendant's position, in fact demonstrate the opposite: direct infringement is impermissible, and it is only attenuated, fleeting, and *historical* use that is permitted. The Logo is currently being used by RRT, so the use by Defendant is certainly not historical, and Defendant's use of it is never "fleeting."

*In re DMCA* and *Seltzer* both rely heavily on transformative use analysis prior to the decision in *Warhol*. Further, in *Seltzer*, the use of a still image was photographed in an alleyway and then that was used in a music video, *i.e.*, several steps of adaptation absent from this case. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013); *see In re DMCA § 512(H) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 (N.D. Cal. 2022).

Finally, *Hustler* involved reprinting a parodic work to bring attention to it, rebut it, and solicit political donations in connection with it. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986). As the Ninth Circuit observed, the intention of the copying was indeed commercial, but it was also to call particular attention *to the copyrighted work* (the original parody), which necessarily requires its reproduction. *Id.* at 1153. Not so here, where the Logo is not at all necessary to criticize

RRT. Again, the fact that nothing about the content of the Logo itself was discussed in any of the infringing videos highlights the critical difference between these cases and the factual scenario present here.

Nor do Defendant's cited set of pre-*Warhol* cases concerning use of photographs to criticize their subjects meaningfully affect the fair use analysis here. Motion at 16. The Logo does not identify RRT in the same way a photo identifies a person: it is a professionally-designed artistic work representative of RRT and used for the purpose of identification, but it is not an image *of* RRT. The cases again rely on a pre-*Warhol* analysis of transformative use of these photographs for purposes of criticism, failing to consider the more narrow questions of whether their uses were reasonably necessary and weighed against the commercial nature of the secondary use. Motion at 16. *Katz* also involved the additional effort of cropping of the original photo into unflattering images with critical captions rather than a direct copying for the purpose of criticizing the owner of the Logo, not the "subject" of the work (here, a stylized bird). Defendant's use of the Logo for the exact same purpose as RRT – to identify RRT – is not transformative post-*Warhol*.

Finally, Defendant's cases on market harm are similarly inapposite. In *Savage*, as in *Hustler*, and unlike here, the content of the copyrighted work was what was being criticized. *Savage v. Council on Am.-Islamic Rels., Inc.,* 2008 U.S. Dist. LEXIS 60545, at *15 (N.D. Cal. July 25, 2008). In *Garcia*, the court never reached the issue of fair use at all, because the proposed work was not copyrightable for multiple reasons as a matter of law. *Garcia v. Google, Inc.*, 786 F.3d 733, 737 (9th Cir. 2015) (en banc). Similarly, in *Bollea*, there were significant issues regarding the validity of the copyright, and the copyrighted work was edited and, once again, *its content* commented upon, all facts that distinguish the present situation. *Bollea v. Gawker Media, LLC*, 913 F. Supp. 2d 1325, 1328-29 (M.D. Fla. 2012). In fact, the *Bollea* copyright claim was an afterthought, included in an amended complaint alongside a litany of privacy-related claims.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

**E.      The Balance of Equities and Public Interest Favor RRT**

Given Defendant's failure of proof as to the first two elements, the court need not consider the final two *Winter* factors. *Garcia*, 786 F.3d at 746; *see also MG Premium Ltd. v. Does*, No. 2:21-cv-08533, 2023 WL 4681368, at *4 (C.D. Cal. June 2, 2023) (holding that because plaintiff failed to show a likelihood of irreparable harm stemming from defendant's DMCA takedown notices, the court need not consider the remaining *Winter* factors). Nonetheless, both factors – the balance of equities and the public interest – favor RRT. The balance of the equities favors RRT because denying the injunction preserves the status quo – RRT may protect its Logo, and Defendant remains free to publish her views. *Stardock*, 2018 WL 7348858, at *10-11 (denying plaintiff's request for injunctive relief for withdrawal of defendant's DMCA takedown notices, holding that "foreclosing Defendants from exercising their statutory right to issue a DMCA notice of infringement would be inequitable and would turn the status quo doctrine on its head."). Regarding the public interest factor, the requested injunction seeks to strip a copyright owner's statutory DMCA rights, chill lawful copyright enforcement, and encourage litigants to seek to enjoin takedown activity whenever fair use is in dispute. None of this serves the public interest. Nor does Defendant's cited case, *Beyond Blond Productions*, compel a different result. It is readily distinguishable: the asserted rights in the takedown notice that the court rescinded via injunction concerned material that was not covered by the copyright owner's purported copyright rights at all. *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 889 (C.D. Cal. 2020).

**V.      CONCLUSION**

For all the foregoing reasons, Defendant cannot satisfy the stringent requirements for a mandatory preliminary injunction, and the Court should deny the Motion.

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION

DATED: April 20, 2026          Respectfully submitted,

                               BROWN RUDNICK LLP


                               By:  /s/ Daniel A. Rozansky
                                    Joel S. Miliband
                                    4 Park Plaza, Suite 420
                                    Irvine, California 92614
                                    Telephone: (949) 752-7100
                                    Facsimile:  (949) 252-1514
                                    jmiliband@brownrudnick.com

                                    Michael R. Graif
                                    Seven Times Square
                                    New York, NY 10026
                                    Tel.: 212-209-4800
                                    mgraif@brownrudnick.com

                                    Daniel A. Rozansky
                                    2121 Avenue of the Stars, Suite 720
                                    Los Angeles, California 90067
                                    Telephone: (424) 525-0200
                                    Facsimile:  (424) 525-0201
                                    drozansky@brownrudnick.com

                                    Katherine C. Dearing (*pro hac vice*)
                                    1900 N Street, Fourth Floor
                                    Washington, D.C. 20036
                                    Tel.: 202-536-1700
                                    kdearing@brownrudnick.com

                                    *Attorneys for Plaintiff/Counterclaim-Defendant Rapid Relief Team (RRT) Ltd. and Counterclaim-Defendant Brown Rudnick LLP*

OPPOSITION TO CHERYL BAWTINHEIMER'S MOTION FOR PRELIMINARY INJUNCTION