Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, Nevada 89147
Telephone: 702-420-2001
ecf@randazza.com

Carrie Goldberg (*pro hac vice* forthcoming)
C.A. GOLDBERG, PLLC
16 Court St, 33rd Floor
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

*Attorneys for Defendant and Counterclaim-Plaintiff,
Cheryl Bawtinheimer*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Rapid Relief Team (RRT) Ltd.,<br><br>　　　Plaintiff and Counterclaim-Defendant,<br><br>　　vs.<br><br>Cheryl Bawtinheimer,<br><br>　　　Defendant and Counterclaim-Plaintiff,<br><br>　　vs.<br><br>Brown Rudnick LLP, Katy-Jade Church, and Michael Graif,<br><br>　　　Counterclaim-Defendants. | Case No.: 4:25-cv-10864-JST<br>JUDGE: Hon. Jon S. Tigar<br><br><br>**COUNTERCLAIM PLAINTIFF'S MEMORANDUM AND OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**<br><br><br>**DATE:** July 2, 2026<br>**TIME:** 2:00 P.M.<br>**COURTROOM:** Courtroom 6 – 2nd Floor<br><br>Action Filed: December 19, 2025<br>Amended Complaint Filed: January 30, 2026 |

Counterclaim-Defendants Rapid Relief Team ("RRT") and Brown Rudnick LLP's ("Brown Rudnick") ("Counterclaim-Defendants") Motion to Dismiss should be denied. The claims are properly pled. The ground on which the motion to dismiss is a jury issue.

**TABLE OF CONTENTS**

1.0    INTRODUCTION AND BACKGROUND ................................................................ 1

2.0    LEGAL STANDARD............................................................................................. 2

3.0    ARGUMENT ........................................................................................................ 2

    3.1.    Section 512(f) and its History ................................................................... 2

    3.2.    Bawtinheimer Adequately Pled the Elements of a 512(f) Claim, Even Under the Heightened Requirements in Place in the Ninth Circuit ............................................ 4

        3.2.1    The Counterclaim properly alleges that Bawtinheimer's use of RRT's bird logo is clearly fair use ................................................................................................. 4

        3.2.2    The Counterclaim properly alleges who sent the DMCAs and to where ................ 5

        3.2.3    The Counterclaim alleges knowing and material misrepresentation ....................... 5

        3.2.4    The Counterclaim alleges that Counterclaim-Defendants knew, or deliberately avoided confirming, that the use was fair and non-infringing.................................................. 6

        3.2.5    The Counterclaim properly alleges knowledge of non-infringement ...................... 7

        3.2.6    The Counterclaim properly alleges that YouTube relied upon the material misrepresentation in the Takedown Notice and, as a direct result, removed or disabled access to the Protected Material ................................................................................................. 8

        3.2.7    The Counterclaim alleges that Bawtinheimer was injured as a result of Counterclaim-Defendants' knowing material misrepresentations ......................................... 9

    3.3.    512(f) Is Not as Impossible to Plead as Counterclaim-Defendants Insist....................... 9

    3.4.    Each Defendant Must be Evaluated Separately ............................................................ 11

    3.5.    The Existence of Counterclaim-Defendants' Good-Faith Belief is a Jury Question that Cannot be Resolved on a Motion to Dismiss ............................................................................. 12

4.0    CONCLUSION..................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009). ................................................................................................ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 2

*Cordova v. Huneault*,
2026 U.S. Dist. LEXIS 13271 (N.D. Cal. Jan. 23, 2026) ........................................ 12

*Curtis v. Shinsachi Pharm. Inc.*,
45 F. Supp. 3d 1190 (C.D. Cal. 2014) ..................................................................... 8

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) ..................................................................................... 2

*Enttech Media Grp. LLC v. Okularity, Inc.*,
2020 U.S. Dist. LEXIS 222489 (C.D. Cal. Oct. 2, 2020) ........................................ 2

*Guy v. City of San Diego*,
608 F.3d 582 (9th Cir. 2010) ................................................................................... 13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................................................. 2

*Lenz v. Universal Music Corp.*,
815 F.3d 1145 (9th Cir. 2016) ........................................................................... passim

*MM Games d.o.o. v. Soares*,
2026 U.S. Dist. LEXIS 35455 (N.D. Cal. Feb. 20, 2026) ....................................... 2

*Ningbo Yituo Enter. Mgmt. Co., Ltd. v. GoPlus Corp.*,
2025 U.S. Dist. LEXIS 200584 (C.D. Cal. Oct. 9, 2025) ........................................ 11

*Online Policy Grp. v. Diebold, Inc.*,
337 F. Supp. 2d 1195 (N.D. Cal. 2004) ................................................................... 3

*Rossi v. Motion Picture Ass'n of Am., Inc.*,
391 F.3d 1000 (9th Cir. 2004) ........................................................................... passim

*Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*,
2026 U.S. Dist. LEXIS 72295 (C.D. Cal. Mar. 26, 2026) ....................................... 12

**STATUTES**

17 U.S.C. § 512 ............................................................................................... 1, 8, 9

17 U.S.C. § 107 ........................................................................................................... 6

**Other Authorities**

4 Nimmer on Copyright § 12B.08 ........................................................................... 3, 12

S. REP. NO. 105-190 (1998) ........................................................................................ 3

**Rules**

Fed. R. Civ. P. 11 ......................................................................................................... 6

Fed. R. Civ. P. 12 ..................................................................................................... 2, 7

**1.0    INTRODUCTION AND BACKGROUND**

RRT had a bothersome critic.  She left its parent cult, the Plymouth Brethren Christian Church ("PBCC"), and criticized RRT and the cult leadership.  They cried out, "who will rid us of this turbulent apostate?" RRT's lawyers knew the answer was "you need to tolerate criticism." Instead, they came up with a plan to file Digital Millennium Copyright Act ("DMCA") notices against Bawtinheimer for copyright infringement. The plan worked; the videos came down.  It is a *certainty* that in this process someone said something to the effect of, "but this is fair use and 512(f) is in the way, isn't it?"  The response? "Do it, what's the worst that could happen?"

The worst that could happen isn't much.  But it is *something*.

Counterclaim-Defendants argue that the 512(f) Counterclaim "*is an improper attempt to weaponize the DMCA*." ECF No. 33 at 6.  With neither a sense of irony nore self awareness, they claim to be victims of "weaponization" of the sole remedy the DMCA expressly provides against actual "weaponization."  RRT and its lawyers "weaponized" the DMCA's takedown machinery to censor Ms. Bawtinheimer's speech.  They now decry Bawtinheimer using the sole backstop Congress created to deter that kind of abuse. Ms. Bawtinheimer did nothing to warrant this censorship, and her attempt to fend it off has the perpetrators claiming victimhood.

A hypothetical: A 9-0 Supreme Court holds that a certain use is fair use.  A week later, Nimmer himself is asked to send a DMCA notice on that exact same content.  Nimmer says "*It's infringement! I have considered fair use! That's the ticket!*"[1]  Counterclaim-Defendants would have us believe that *Rossi/Lenz* mean that there is no 512(f) claim in that circumstance.  By their logic, there is no situation too implausible to meet the *Rossi/Lenz* standard.  Wrong. *Rossi/Lenz* is not a freewheeling license to censor as long as you use the magic words: "I considered fair use."

---

[1] John Lovitz as the Pathological Liar, Saturday Night Live (NBC television Nov. 16, 1985).

## 2.0    LEGAL STANDARD

A complaint moves past a 12(b)(6) motion as long as it states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). If a motion to dismiss is granted, the court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks and citation omitted). Ms. Bawtinheimer has met this standard.

## 3.0    ARGUMENT

### 3.1.    Section 512(f) and its History

"'To state a claim for violation of 17 U.S.C. § 512(f), a plaintiff must allege that a defendant (1) knowingly and materially misrepresented that copyright infringement occurred, (2) that a service provider relied on such misrepresentation, and (3) that plaintiff was injured as a result.'" *MM Games d.o.o. v.* Soares, 2026 U.S. Dist. LEXIS 35455, *15 (N.D. Cal. Feb. 20, 2026) (quoting *Enttech Media Grp. LLC v. Okularity, Inc.*, 2020 U.S. Dist. LEXIS 222489, *11-12 (C.D. Cal. Oct. 2, 2020)).  This serves as an important check against abuse of the DMCA takedown process.

The DMCA notice and takedown provision permits a copyright owner to achieve a preliminary injunction's worth of relief without any due process. No oversight. No vetting. Just send the notice and get the relief you want – content removed from the Internet.  However, the DMCA was not designed to grant censors a consequence-free gag to place over the mouths of critics as long as they parrot the incantation "I have considered fair use."

When Congress started writing the DMCA, it presumed that copyright owners would use it responsibly. But free speech stakeholders made it clear that its powerful self-help preliminary injunction style relief would inevitably be abused. The Senate Report on Section 512(f) explained that the committee was concerned that material should not be censored without proper justification: "The provisions in the bill balance the need for rapid response to potential infringement with the end-users['] legitimate interests in not having material removed without recourse." S. REP. NO. 105-190 at 21 (1998). Congress sought to discourage DMCA abuse with Section 512(f), requiring those sending a takedown notice to affirm a "good faith belief" that the allegedly infringing material is infringing and is not "authorized by…the law." 17 U.S.C. § 512(c).

Misrepresentations actionable under that section include takedown notices that target fair use because fair use is "**wholly authorized by the law**." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016) (emphasis added). Before sending a DMCA notice, the *signatory* must have a "good faith belief" that the law does not authorize the use. *Id*. at 1154-55. "Knowing" in this context includes not only actual knowledge, but also reckless disregard of the truth or willful blindness, which are not standards that can be evaluated before discovery. *See, e.g., Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal. 2004). Willful blindness may be used to determine whether a defendant has knowingly misrepresented that they had a good faith belief the allegedly offending activity was not fair use. *Lenz*, 815 F.3d at 1155; *see also Executive Lens LLC v. Rapkin,* 2026 U.S. Dist. LEXIS 58448, at *9-10 (N.D. Cal. Mar. 19, 2026).

To prevail on a § 512(f) claim, Plaintiff need only show that Defendants "knowingly materially misrepresent[ed]" that Plaintiff's material was infringing. *See* 4 Nimmer on Copyright § 12B.08. Whether Counterclaim-Defendants acted with the requisite scienter under 17 U.S.C. § 512(f) is a jury question. *Lenz*, 815 F.3d at 1154.

### 3.2.    Bawtinheimer Adequately Pled the Elements of a 512(f) Claim, Even Under the Heightened Requirements in Place in the Ninth Circuit

Counterclaim-Defendants argue that the 512(f) claim is supported only by conclusory statements rather than factual allegations. But to get there, they ignore most of the Counterclaim.

### 3.2.1    The Counterclaim properly alleges that Bawtinheimer's use of RRT's bird logo is clearly fair use

This may be the most obvious fair use in the history of copyright law. This image here is an example of how Bawtinheimer "infringed on" the "copyrighted logo." Counter-Defendant Michael Graif, at Brown & Rudnick, on behalf of RRT, signed a DMCA takedown notice *under penalty of perjury*, that the bird logo you see here, in *this context*, was not fair use.



*Exhibit 22 To the Counterclaim*

ECF No. 27-1 at 12; ECF No. 31-5 at ¶ 5. As a result, the video was censored and Ms. Bawtinheimer's YouTube account suffered a copyright strike.

Using a logo of an organization *to identify that organization,* while showing that organization's website, while commenting on the content of the organization's website, is so stark raving fair use that no reasonable person, much less a reasonable attorney, could believe otherwise. *See* ECF No. 26 at Counterclaim ¶¶ 32, 35, 42, 49, 72. It is even more implausible when you consider Mr. Graif's own declaration about his vast expertise in copyright law. ECF No. 31-5 at ¶¶ 3-4. If this claim were dismissible simply because the wrongdoer cooked up a patently implausible copyright claim, then 17 U.S.C. §512(f) would mean nothing more than someone would need to robotically parrot "I considered fair use" in order to evade liability.

Opposition to Counterclaim-Defendants' Motion to Dismiss
Case No. 4:25-cv-10864-JST

Counterclaim-Defendants assert that Bawtinheimer's allegations about fair use are merely legal conclusions that the Court need not accept as true. ECF No. 33 at 13-14. This is only true in the sense that alleging something is a fair use does not conclusively prove it is a fair use for purposes of a motion to dismiss. Agreed. But Counterclaim-Defendants' argument does not help them. The Court is equipped to determine the issue of fair use by just looking at the pleadings and exhibits, especially the videos themselves. The Counterclaim provides thorough factual allegations as to how Bawtinheimer's uses are fair. ECF No. 26 at Counterclaim ¶¶ 34-44, 48-57.[2] Counterclaim-Defendants do not address these allegations. Indeed, Counterclaim-Defendants do not even argue that Bawtinheimer's uses are not fair,[3] thereby conceding the point.

### 3.2.2     The Counterclaim properly alleges who sent the DMCAs and to where

The Counterclaim adequately alleges who sent the bad-faith DMCA notices and to where, and Counterclaim-Defendants do not argue otherwise. ¶¶ 25–26 allege that attorneys Church and Graif personally signed and swore to the notices on behalf of RRT and Brown Rudnick. ¶¶ 34, 41, 46, 48, 51-52, 55, and 79-80 allege which specific Brown Rudnick attorneys sent which DMCA notices. ¶ 28 alleges that all the DMCA notices were sent to YouTube.

### 3.2.3     The Counterclaim alleges knowing and material misrepresentation

All DMCA takedown notices must contain a statement under penalty of perjury, pursuant to 17 U.S.C. § 512(c)(3)(A)(v), that the signatory had "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." ¶¶ 25-26 of the Counterclaim explicitly allege that Church and Graif "falsely swore under penalty

---

[2] Even if there were a question as to fair use requiring consideration of extrinsic facts, that would counsel *against* granting the instant motion. Counterclaim-Defendants' cases for the proposition that 512(f) claims based on debatable fair use determinations are routinely dismissed (ECF No. 33 at 16) do not help them because none of them deal with dismissals at the pleading stage.

[3] The Motion asserts there is "[a] disagreement regarding the applicability of fair use" that cannot establish § 512(f) liability, but the grounds for this disagreement are not explained.

of perjury that [they] had a good-faith belief that Bawtinheimer's use … was not 'authorized by … the law.'" ¶¶ 71 and 83 allege that Counterclaim-Defendants knowingly misrepresented that Bawtinheimer's fair use amounted to copyright infringement, and specifically that they knew her use was fair. Counterclaim-Defendants argue that allegations made on "'knowledge' or 'belief'" are not factual allegations the Court must accept as true, as they are equivalent to conclusory allegations. ECF No. 33 at 11. Bawtinheimer's allegations are not equivocal or uncertain, though; she directly alleges Church and Graif made material misrepresentations when submitting the DMCA notices and that Counterclaim-Defendants had actual knowledge Bawtinheimer was not infringing copyright when they sent the DMCA notices.

The Counterclaim also properly alleges Counterclaim-Defendants' DMCA notices were materially false. Bawtinheimer's uses of the RRT Logo constituted fair use under 17 U.S.C. § 107 and thus were authorized by law. ECF No. 26 at Counterclaim ¶¶ 32 ("the use in each and every video is obviously fair use"), 35 ("The fair use here is evident"), 42 ("one needs to go no further than the title to see that this is fair use"), 49, 72 ("self-evidently non-infringing fair use"); ¶ 73 (the uses are transformative criticism and commentary and did not amount to market substitution); ¶¶ 35–40, 42–44, 49–50 (detailed descriptions of the videos as criticism of RRT/PBCC hypocrisy). Counterclaim-Defendants are free to violate Fed. R. Civ. P. 11 and argue that Bawtinheimer's uses of the RRT Logo were not fair use, but they do not address *any* of the Counterclaim's factual allegations supporting that conclusion.

### 3.2.4 The Counterclaim alleges that Counterclaim-Defendants knew, or deliberately avoided confirming, that the use was fair and non-infringing

Bawtinheimer specifically alleges Counterclaim-Defendants' subjective awareness that her uses of the RRT Logo were fair uses. ECF No. 26 at Counterclaim ¶¶ 74 (alleging "actual subjective knowledge that the use of the logo did not infringe on RRT's copyrights and it was fair

use"), 75 (alternatively alleging that "Counterclaim-Defendants were willfully blind to fair use prior to issuing the takedown notices under the DMCA), 76 (alternatively alleging that "Counterclaim-Defendants failed to consider fair use prior to issuing their takedown notices under the DMCA), 77 (alleging that "[a]ny reasonable person, and certainly any reasonably competent attorney, would be able to determine upon *any* degree of inspection, that the . . . use of the RRT Logo in the videos was a fair use"), 78-80 (alleging that RRT, Church, and Graif were "aware that none of the above videos infringed . . . copyright in the RRT Logo"), 81 (alleging that "[i]t is impossible for Graif to have formed a good-faith belief that Bawtinheimer's above uses of the RRT Logo were anything other than fair uses").

Counterclaim-Defendants argue that these direct allegations are insufficient because they are not supported by factual allegations. ECF No. 33 at 11. But they ignore the rest of the Counterclaim, which explains at length how blindingly obvious it is that Bawtinheimer's videos at issue are making a fair use of the RRT Logo. ECF No. 26 at Counterclaim ¶¶ 34-44, 48-57. It is eminently reasonable to conclude that when a use is a textbook example of fair use and someone, especially a proclaimed copyright law expert, submits a DMCA notice over it anyway, the sender of the notice either lied about, consciously disregarded, or did not even consider fair use.

### 3.2.5    The Counterclaim properly alleges knowledge of non-infringement

Counterclaim-Defendants argue that Bawtinheimer does not identify sufficient facts supporting her claim that they had actual knowledge of non-infringement. ECF No. 33 at 11-12. That is not how the 12(b)(6) standard works. A plaintiff may allege a defendant's subjective mental state generally without anything further and survive a 12(b)(6) motion. *See Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014) ("While 512(f) requires actual knowledge of the infringement misrepresentation, that requirement is a statement of mind that [Counter-

Plaintiffs] properly averred generally," and noting that even under Fed. R. Civ. P. 9(b), knowledge may be alleged generally).

The above allegations of the Counterclaim are sufficient to plead a 512(f) claim. But even if they weren't, the rest of the Counterclaim is replete with sufficient allegations. *See* ECF No. 26 at Counterclaim ¶¶ 76 (explicitly alleging failure to conduct proper fair-use analysis); ¶¶ 1, 7, 14–17, 21 (alleging RRT's censorship campaign and SLAPP tactics to silence critics via DMCA abuse and YouTube's repeat-infringer policy); ¶¶ 58–59, 63–69 (alleging PBCC's long history of similar intimidation against ex-members); ¶ 81 (alleging that Graif "publishes on fair use [and] teaches CLEs" on the topic, evidencing his subjective awareness of Bawtinheimer's uses being fair); and ¶¶ 18-19 (alleging Brown Rudnick's litigation experience with 512(f) cases and touted experience in copyright law and fair use, evidencing its subjective awareness of Bawtinheimer's uses being fair). The only way to more specifically allege subjective awareness would be to amend the Counterclaim after deposing Counterclaim-Defendants.

### 3.2.6   The Counterclaim properly alleges that YouTube relied upon the material misrepresentation in the Takedown Notice and, as a direct result, removed or disabled access to the Protected Material

Counterclaim-Defendants do not dispute that YouTube relied upon their DMCA notices to remove Bawtinheimer's videos. *See* ECF No. 26 at Counterclaim ¶¶ 45 (YouTube removed videos in response to notices, reinstated after counter-notices but re-removed due to litigation), 63 (YouTube "disabled access" to each video "in response to" the DMCA notices), and 82 (alleging YouTube relied on and acted on the misrepresentations by removing/disabling the videos).

### 3.2.7   The Counterclaim alleges that Bawtinheimer was injured as a result of Counterclaim-Defendants' knowing material misrepresentations

Counterclaim-Defendants do not dispute that Bawtinheimer was harmed by their bad-faith DMCA notices. *See* ECF No. 26 at Counterclaim ¶¶ 82, 84 (alleging removal of videos in response

- 8 -
Opposition to Counterclaim-Defendants' Motion to Dismiss
Case No. 4:25-cv-10864-JST

to DMCA notices and resulting damages), 85 (expenditure of attorneys' fees in response to DMCA notices compensable under 17 U.S.C. § 512(f)).

### 3.3.    512(f) Is Not as Impossible to Plead as Counterclaim-Defendants Insist

Section 512(f) is not so weak that any defendant in such a claim may simply parrot the magic words "we considered fair use" and enjoy a dismissal at the pleading stage. Counterclaim-Defendants seem to be under the impression that a 512(f) defense requires nothing more than a statement that the signatory *considered* fair use, regardless of what conclusion that consideration leads to, meaning the test is *purely* subjective, and not subject to being tested by the trier of fact. However, even the flawed view presented by *Lenz* is not quite that forgiving: "A copyright holder who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability." *Lenz*, 815 F.3d at 1154.[4]

And this is more attuned to trial, not 12(b)(6), but it is still relevant: Most 512(f) cases have focused on copyright *owners* – not *experienced copyright counsel* – signing DMCA notices. This case may have *Rossi/Lenz*'s genetic material, but it is a separate species. In *Rossi*, the Defendant advertised that his website contained piracy. *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1002 (9th Cir. 2004). He was lying, but one cannot deeply criticize the person who signed the DMCA notice for taking Rossi at his word. And in *Lenz*, the notices were signed by Sean Johnson, an assistant in Universal Music's legal department. Mr. Johnson was due some grace as someone uneducated on copyright law. Experienced and top-priced copyright lawyers who sign that DMCA notice under penalty of perjury should be held to a different standard of knowledge and "consideration" than Sean. The problem here is not that Counterclaim-Defendants made an honest fair use analysis mistake. It is that they believed that the *Rossi/Lenz* standard

---

[4] And if this is, indeed, the standard, Ms. Bawtinheimer intends to pursue this matter to modify or reverse Lenz.

presents an insurmountably high bar in the Ninth Circuit, and even if a plaintiff can get over that bar, the punishment is light. The monetary damages are light, and even the attorneys' fees are likely to amount to less than a rounding error for RRT, albeit life-changing for Ms. Bawtinheimer.

Perhaps the *Rossi/Lenz* standard is high enough to shield the Sean Johnsons of the world forever.[5] But if the term "good faith" is not mere surplusage in the statute, it should at least mean that there is a point on a sliding scale at which a finder of fact may conclude a DMCA notice could only be issued with falsity or willful blindness. *Rossi* may have licensed being too lazy to click on a link to confirm whether there is infringement. *Lenz* may have given grace to a legal assistant who gets too caught up in his job. But *Rossi/Lenz* does not insist upon pathological gullibility. Mr. Graif, Ms. Church, Brown & Rudnick, and RRT may all claim that they considered fair use in good faith, but the evidence they submitted with the complaint contradicts this. A jury should get the opportunity to weigh the evidence and decide who they believe. *Lenz*, 815 F.3d at 1154 n.3.

No reasonable person could have believed that the use here was not fair use unless they were willfully blind, or they simply failed to consider all four factors (and considering less than all four factors is not "*considering*" fair use). Counterclaim-Defendants argue that the reference to a reasonable person or reasonable attorney is somehow an admission that the 512(f) claim rests on the wrong legal standard, but they misunderstand the Counterclaim. The "reasonableness" allegations are in addition to the direct and specific allegations of actual, subjective knowledge that Bawtinheimer's uses of the RRT Logo were fair uses. *See* Section 3.2, *supra*. That no reasonable person could have thought otherwise is a supporting fact bolstering these allegations of

---

[5] Ms. Bawtinheimer does not waive the argument that *Rossi* and *Lenz* need to be revisited by the Ninth Circuit *en banc*, in light of the incorrect nature of the statutory analysis. Nevertheless, this case fits through the path that *Rossi/Lenz* left open.

subjective knowledge. *Rossi/Lenz* should be reconsidered, but this Court can allow the 512(f) claim to proceed without doing so.

### 3.4.    Each Defendant Must be Evaluated Separately

RRT argues it has plausible deniability under the unreported decision in *Ningbo Yituo Enter. Mgmt. Co., Ltd. v. GoPlus Corp.*, 2025 U.S. Dist. LEXIS 200584, *18 (C.D. Cal. Oct. 9, 2025) (finding that copyright owner retaining "outside counsel experienced in copyright law does not in any way plausibly support subjective bad faith"). *GoPlus* is distinguishable, however, because Bawtinheimer alleges that RRT itself subjectively knew that the material was not an infringement, but authorized the DMCA notices anyway. ECF No. 26 at Counterclaim ¶¶ 14–17, 21, 78–80. The 512(f) claim is properly alleged as to RRT.

Brown Rudnick, Graif, and Church were not mere passive bystanders.  The attorneys prepared, reviewed, signed, and filed the DMCA notices.  *See* ECF No. 26 at Counterclaim ¶¶ 18–19, 25–26.  Brown Rudnick represented a party in a § 512(f) case just a year before sending these notices, and its attorneys "tout themselves as experts in the field" with "actual knowledge of copyright law and fair use."  *Id.* at ¶¶ 18–19.  It cannot disclaim awareness of the very legal standards about which it regularly advises clients.[6]

### 3.5.    The Existence of Counterclaim-Defendants' Good-Faith Belief is a Jury Question that Cannot be Resolved on a Motion to Dismiss

Bawtinheimer may find it challenging to find a smoking gun admission of Counterclaim-Defendants' subjective bad faith, but that does not mean the Court should not allow this claim to

---

[6] There is also Michael Graif, who claims he has not been served and has not entered a formal appearance or joined the instant motion.  However, he is not only attorney of record for RRT on this case, despite the conflict, but has actively participated in this case and submitted evidence in support of RRT's opposition to Bawtinheimer's Motion for a Preliminary Injunction, and led the Rule 26(f) conference on April 30, 2026.  Accordingly, he should be deemed to have been served by ECF. But even if the Court does not wish to deem him served, its decision on this Motion should be binding on him as well.

proceed to discovery. Even courts that have dismissed 512(f) claims typically do so after the parties have had the opportunity to take discovery; after all, what question is more fact-intensive than a party's subjective mental state?

> Indeed, in *Lenz* the Ninth Circuit held that, in that case, "a *jury* must determine whether [defendant's] actions were sufficient to form a subjective good faith belief about the video's fair use or lack thereof." *Lenz*, 815 F.3d at 1154; *see also id.* n.3 ("[T]he question is whether the analysis [defendant] did conduct of the video was sufficient . . . to form a subjective good faith belief that the video was infringing . . . *that question is for the jury, not this court to decide*").

*Cordova v. Huneault*, 2026 U.S. Dist. LEXIS 13271, *16 (N.D. Cal. Jan. 23, 2026) (quoting *Lenz*, 815 F.3d at 1154 n.3) (cleaned up); *see Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, 2026 U.S. Dist. LEXIS 72295, *7 (C.D. Cal. Mar. 26, 2026) (finding that "whether Take-Two formed a subjective good faith belief that PlayerAuctions's listings did not constitute fair use is a question of fact not appropriate for resolution at the pleading stage"). As discussed in 4 Nimmer on Copyright § 12B.08:

> At the end of the day, perhaps the best way to understand [*Lenz*] is as a recognition that fair use acts as a unique doctrine within the copyright orbit. It is therefore subject to its own *sui generis* rules before a takedown notice can be freely sent. In other words, to avoid liability under Section 512(f), a proprietor must consider its own ownership of the copyright in question and, alone among all possible defenses, must also consider the potential for fair use.
>
> …
>
> *Rossi* did not consider whether an objective or subjective standard applies under Section 512(f)—it concluded instead that a subjective good faith requirement pertains under a different subsection, namely Section 512(c). But *Lenz* transports that standard as the governing construction of Section 512(f).

Here, the circumstances surrounding Counterclaim-Defendants' takedown notices, including the motive to censor rather than protect legitimate copyright interests, and any internal communications or lack of pre-notice investigation, raise triable issues of fact on Counterclaim-Defendants' scienter that cannot be resolved as a matter of law. Counterclaim-Defendants' motion

asks this Court to short-circuit the jury's role in assessing credibility and intent. That is not proper. Even if Counterclaim-Defendants unshakingly insist that they "considered fair use" in good faith, *Lenz* makes it clear that this is a jury question. Counterclaim-Defendants cannot simply say the magic words "I considered fair use" and make that the end of it. A jury should decide if it believes them. *Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir. 2010) ("[I]t has long been held that a jury may properly refuse to credit even uncontradicted testimony").

## 4.0    CONCLUSION

Counterclaim-Plaintiff Cheryl Bawtinheimer respectfully requests that the Court deny Counterclaim-Defendants' Motion to Dismiss Count One in its entirety. In the alternative, should the Court grant the motion, Bawtinheimer respectfully requests leave to amend to address any deficiencies the Court identifies.

Dated: May 5, 2026.                              Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC          C.A. GOLDBERG, PLLC
/s/ Marc J. Randazza
Marc J. Randazza, SBN 269535              Carrie Goldberg (*pro hac vice* forthcoming)
Alex J. Shepard, SBN 295058                16 Court St, 33rd Floor
8991 W Flamingo Rd., Suite B               Brooklyn, NY 11241
Las Vegas, NV 89147

*Attorneys for Defendant and Counterclaim-Plaintiff, Cheryl Bawtinheimer*

Case No. 4:25-cv-10864-JST

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza