UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAPID RELIEF TEAM (RRT) LTD., | Case No. 25-cv-10864-JST |
| Plaintiff and Counterclaim-Defendant, | |
| v. | **ORDER DENYING MOTION TO DISMISS AND MOTION FOR A PRELIMINARY INJUNCTION** |
| CHERYL BAWTINHEIMER, | Re: ECF No. 27, 33 |
| Defendant and Counterclaim Plaintiff. | |
| v. | |
| BROWN RUDNICK LLP, KATY-JADE CHURCH, AND MICHAEL GRAIF | |
| Counterclaim-Defendants. | |

Before the Court is Plaintiff and Counterclaim-Defendant Rapid Relief Team (RRT) Ltd.'s ("RRT") motion to dismiss and Defendant and Counterclaim-Plaintiff Cheryl Bawtinheimer's motion for a preliminary injunction. ECF Nos. 27 and 33. The Court will deny both motions.

I.      BACKGROUND

A.      RRT's Complaint

On December 19, 2025, RRT filed a complaint against Cheryl Bawtinheimer alleging violations of Section 501 of the Copyright Act, 17 U.S.C. § 501. ECF No. 1 ¶ 26. It filed an amended complaint on January 30, 2026. ECF No. 7. "Founded in 2013 in Sydney, Australia by

United States District Court
Northern District of California

the Plymouth Brethren Christian Church ["PBCC"], Plaintiff RRT is a global charitable relief organization offering compassionate support to communities impacted by national disasters and humanitarian crises." *Id*. ¶ 2.  RRT alleges that it owns the copyright in a stylized bird logo known as Cookie the Kookaburra or the RRT Cookie Bird ("Copyrighted Work"), which was first published by RRT in 2019 in New Zealand and the United Kingdom.  *Id*. ¶ 1.  RRT alleges that it has possessed all copyright rights in the logo since September 9, 2025.  *Id*. ¶ 3.  It claims that Bawtinheimer utilized the Copyrighted Work without RRT's authorization, consent, or knowledge in her video podcast, "Get a Life Podcast," which is hosted on YouTube.  *Id*. ¶¶ 17–19.  RRT alleges that on October 28, 2025, it submitted a takedown request to YouTube to remove two of Bawtinheimer's videos under the Digital Millenium Copyright Act, 17 U.S.C 512(c)(3), and that YouTube complied in December 2025.  *Id*. ¶¶ 21, 23.  On December 7, 2025 and December 14, 2025, Bawtinheimer filed a counternotification under 17 U.S.C. § 512(g)(3) asking YouTube to restore the videos.  *Id*. ¶¶ 23–27.  RRT submitted DMCA takedown requests for three additional videos on January 28, 2026.  ¶¶ 28–34.  RRT claims that Bawtinheimer's "identical use and exploitation" of RRT's Copyrighted Work has caused damage to RRT.  *Id*. ¶¶ 35–37.  RRT asks that the Court find that Defendant in violation of Section 501 of the Copyright Act, enjoin Bawtinheimer's current and future use of the Copyrighted Work, destroy any infringing videos and materials, and award to RRT any of Bawtinheimer's profits from the infringing conduct.  *Id*. at 12–14.

### B.     Bawtinheimer's Counterclaim

On April 3, 2026, Bawtinheimer filed a counterclaim against RRT, RRT's counsel in this litigation, Brown Rudnick LLP, and Brown Rudnick attorneys Katy-Jade Church and Michael Graif.  ECF No. 26.  She asserts that she is a former member of PBCC, also known as the Exclusive Brethren, and that she was sexually abused and trafficked by a PBCC "elder."  *Id*. ¶ 8. Bawtinheimer claims that she started her podcast, Get-a-Life Podcast ("GAL"), in order to create a community and provide a support system for other former-PBCC members.  *Id*.  Bawtinheimer states that the podcast is primarily an avenue to "expose abuse and corruption" within PBCC.  *Id*. ¶ 9.  Bawtinheimer alleges that the RRT "functions as the PR wing of the PBCC, generating a

2

United States District Court
Northern District of California

constant stream of 'feel-good' publicity in an attempt to counter and bury the darker truths hidden behind closed doors." *Id*. ¶ 12. Bawtinheimer alleges that the take-down requests submitted against her videos are part of a broader censorship campaign by RRT and PBCC to stifle criticism and intimidate critics. *Id*. ¶¶ 14–16. She alleges that RRT, Brown Rudnick, Church, and Graif plan to barrage her YouTube channel with knowingly false takedown notices under DMCA "to try and get the entire channel shut down and to intimidate Bawtinheimer into silence." *Id*. ¶ 15. She claims that Counterclaim-Defendants know that YouTube shuts down channels of those deemed to be "repeat infringers" for receiving too many infringement complaints, which is the result they are trying to achieve concerning Bawtinheimer. *Id*. ¶¶ 14–16. Bawtinheimer alleges that Brown Rudnick, Graif, and Church knew that the DMCA takedown notices were false but submitted them anyway in order to silence her. *Id*.

Church sent takedown notices on October 28, 2025 seeking to remove the GAL videos titled "Lindy expresses her concern regarding the Plymouth Brethren Christian Church's RRT charity" and "Rapid Relief Team: Hypocrisy & Families Divided at Christmas," on the grounds that the videos infringed on RRT's copyright. *Id*. ¶ 34. Bawtinheimer claims that the video constitutes fair use because it is "criticism and commentary" regarding RRT and PBCC. *Id*. ¶ 35. Bawtinheimer sent counter-notices to DMCA, after which YouTube reinstated both videos. *Id*. ¶ 45. Bawtinheimer claims that Church sent a new round of notices on January 10, 2026, asking YouTube to takedown the two reinstated videos on the basis of the pending litigation. *Id*. ¶ 46. Bawtinheimer alleges that Church and Graif sent out takedown notices for three other different videos on January 28, 2026 alleging copyright infringement. *Id*. ¶¶ 48–53. Bawtinheimer alleges that these videos showed the copyrighted logo for few seconds at a time and that the podcast criticized RRT and PBCC. *Id*.

Bawtinheimer alleges that "[n]one of the Counterclaim-Defendants could possibly have believed that the DMCA takedown requests were legitimate, and they had actual knowledge that they were abusing the DMCA process, but they thought they could get away with it." *Id*. ¶ 59. In the alternative, Bawtinheimer alleges that Counterclaim-Defendants "were so reckless and had so much constructive knowledge of the facts and the law that even if they claim otherwise, they

should be held to have knowingly and willfully abused the DMCA takedown process." *Id*. ¶ 60. Bawtinheimer alleges that Counterclaim-Defendants violated 17 U.S.C. § 512(f) of the DMCA by knowingly and materially misrepresenting that the use of the copyright was not fair use. *Id*. ¶ 71. Bawtinheimer also seeks a declaratory judgment under 28 U.S.C. § 2201 that her use of the Copyrighted Work in her criticism of RRT and PBCC constitutes fair use. *Id*. ¶ 90.

### C.    Procedural History

RRT filed its complaint on December 19, 2025. ECF No. 1. RRT filed a first amended complaint on January 30, 2026. ECF No. 7. Bawtinheimer appeared and filed an answer and a counterclaim and third-party complaint against RRT, Brown Rudnick, Church, and Graif on April 3, 2026. ECF No. 2026. Bawtinheimer filed a motion for a preliminary injunction on April 4, 2026. ECF No. 27. RRT and Brown Rudnick filed an opposition to the motion for preliminary injunction on April 20, 2026 and Bawtinheimer filed a reply on April 27, 2026. ECF Nos. 31, 36. RRT and Brown Rudnick filed an objection to evidence submitted in Bawtinheimer's reply to the preliminary injunction on May 5, 2026. ECF No. 39. RRT and Brown Rudnick moved to dismiss Bawtinheimer's 17 U.S.C. § 512(f) claim on April 24, 2026. ECF No. 33.[1] Bawtinheimer, RRT, and Brown Rudnick stipulated to consolidate the hearing on the motion to dismiss and the preliminary injunction on May 1, 2026, which the Court granted on May 5, 2026. ECF Nos. 38, 40. Bawtinheimer filed her opposition to motion to dismiss on May 5, 2026, and the reply was filed on May 15, 2026. ECF No. 49. The Court held a hearing on the motion of June 18, 2026.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

## III.    LEGAL STANDARD

### A.    Motion to Dismiss Counterclaim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not

---

[1] Graif and Church did not accept service till later and accordingly did not join the motion to dismiss. ECF No. 59. Graif and Church separately filed a motion to dismiss on June 10, 2026. ECF No. 65.

United States District Court
Northern District of California

required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  A party may move to dismiss based on the failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a motion to dismiss, a pleading must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

"A Rule 12(b)(6) motion to dismiss a counterclaim for failure to state a claim is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015); *see also Oracle Am., Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 900 (N.D. Cal. 2013).  However, "on a motion to dismiss a counterclaim, the Court cannot accept as true factual allegations alleged by the moving party in the initial Complaint . . . ." *State Farm Life Ins. Co. v. Landfried*, No. 5:19-cv-1845-SVW-SHK, 2020 WL 5356706, at *3 (C.D. Cal. June 25, 2020) (emphasis omitted).

### B.    Motion for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.  A preliminary injunction may also be appropriate if a movant raises "serious questions going to the merits" and the "balance of hardships . . . tips sharply towards" it, as long as the second and third *Winter* factors are satisfied.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

5

1134–35 (9th Cir. 2011).

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

## IV.    DISCUSSION

### A.    Motion to Dismiss

RRT and Brown Rudnick move to dismiss Bawtinheimer's 17 U.S.C. § 512 (f) claim for failure to state a claim. ECF No. 33. For the following reasons, the Court denies the motion.

The Digital Millenium Copyright Act provides copyright owners with the ability to combat infringement by submitting a takedown notice to an internet service provider. *Shande v. Zoox, Inc.*, No. 22-CV-05821-BLF, 2024 WL 2306284, at *3 (N.D. Cal. May 21, 2024). The DMCA also has provisions to prevent bad faith takedown notices. Specifically, the DMCA provides that:

> Any person who knowingly materially misrepresents
>
> (1) that material or activity is infringing, or
>
> (2) that material or activity was removed or disabled by mistake or misidentification.
>
> shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f).

To state a Section 512(f) claim, a plaintiff must allege that: (1) the defendant knowingly and materially misrepresented that copyright infringement had occurred; (2) service providers relied on the misrepresentations; and (3) the plaintiff was injured as a result. *Cal. Beach Co. v.*

6

*Han*, 2020 WL 6276987, *6 (N.D. Cal. 2020), *report and recommendation adopted*, 2020 WL 6271225 (N.D. Cal. 2020) (*citing Automattic., Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1023 (N.D. Cal. 2015)).  A copyright owner is not liable "simply because of an unknowing mistake, even if the copyright owner acted unreasonably in making the mistake." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004).  Instead, there must allegations about "'some actual knowledge of misrepresentation on the part of the copyright owner' in submitting the takedown notice." *Zoox, Inc.*, 2024 WL 2306284 at *3 (citation modified).

With respect to the first element, Bawtinheimer alleges that RRT and Brown Rudnick were aware that her use of the Copyrighted Work was non-infringing fair use, and that they nonetheless knowingly misrepresented Bawtinheimer's usage as infringing in submitting or directing the submission of takedown notices to YouTube.  ECF No. 26 ¶¶ 78–83.  With respect to the second element, Bawtinheimer alleges that her videos were taken down, restored upon her filing of a counter-notice, and then taken down again when RRT and Brown Rudnick filed this case.  *Id*. ¶¶ 45, 63, 82.  Bawtinheimer also alleges that she has suffered damages due to the takedowns because of lost monetization on her videos and her need to retain attorneys to defend the DMCA notices.  *Id*. ¶¶ 82, 84.

Counterclaim-Defendants make several arguments in support of dismissal.  First, they argue that Bawtinheimer's allegations regarding their state of mind are factually insufficient.  ECF No. 33 at 11.  The Court disagrees.  The complaint alleges that RRT sought to stifle criticism of RRT and PBCC on Bawtinheimer's YouTube channel; that RRT and Brown Rudnick knowingly submitted false DMCA takedown requests for videos that used the Copyrighted Work; that RRT knew that if it submitted enough takedown notices, YouTube might take down Bawtinheimer's podcast channel may be taken down; and that RRT knew that Bawtinheimer's use was fair use.  ECF No. 26 at ¶¶ 14–15.  Bawtinheimer also alleges that the takedown notices were filed by Brown Rudnick and its attorneys in spite of their professional knowledge of the contours of copyright law and understanding that her usage of Copyrighted Work was fair use.  *Id*. ¶¶ 18–19.  These allegations are sufficient to survive a motion to dismiss.  *See, e.g., Cordova v. Huneault*, 817 F. Supp. 3d 819, 828–29  (N.D. Cal. 2026) (plaintiff adequately alleged facts from which the

United States District Court
Northern District of California

7

Court could conclude that defendants' 'fair use' representations were false and made in bad faith).

RRT next argues that Bawtinheimer's allegations that RRT knew it was making material misrepresentations that Bawtinheimer infringed are "conjectur[al]." ECF No. 33 at 12; ECF No. 49 at 7. It argues that Bawtinheimer does not identify a factual basis for her allegations about RRT's actual knowledge. ECF No. 49 at 7. No such factual allegations, however, are required: "while § 512(f) requires actual knowledge of the infringement misrepresentation, that requirement is a state of mind that [Bawtinheimer] [can] properly aver[] generally." *Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014) (citing Fed. R. Civ. P. 9(b)); *MM Games d.o.o. v. Rebelo Soares*, No. CV 25-1969-GW-JPRX, 2026 WL 529638, at *6 (C.D. Cal. Feb. 20, 2026) (quoting *Curtis*).

RRT contends that "[a] disagreement regarding the applicability of fair use cannot establish § 512(f) liability." ECF No. 33 at 16. At the motion to dismiss stage, however, the Court is not "establishing liability." "The court instead asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face.'" *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting *Twombly*, 550 U.S. at 570). Indeed, "[a] complaint that satisfies this standard is 'well-pleaded' and 'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Id*. (quoting *Twombly*, 550 U.S. at 556). Perhaps owing to this disconnect, RRT's cited authority is not helpful. Of the two cases it cites in support, one involved cross-motions for summary judgment, *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34 (S.D.N.Y. 2017), and the other stated the court's decision after a bench trial, *Shaffer v. Kavarnos*, No. 23-CV-10059 (KMK), 2025 WL 2299173 (S.D.N.Y. Aug. 7, 2025).

Third, RRT argues that Bawtinheimer impermissibly pleads "objective" bad faith as opposed to "subjective" bad faith. ECF No. 33 at 14–15. The Court concludes otherwise. "Objective bad faith . . . focuses not on the actor's state of mind but instead the reasonableness of her conduct, tested against the norms of a legally relevant community." David Pozen, *Constitutional Bad Faith*, 129 HARV. L. REV. 129 885, 893 (2016). On the other hand, "'[s]ubjective' bad faith may involve the use of deception to conceal or obscure a material fact, a malicious purpose, or an improper motive or belief, including the belief that one's own conduct is

United States District Court
Northern District of California

unlawful." *Id*. at 882.  Accordingly, to adequately plead subjective bad faith, a plaintiff must allege "some actual knowledge of misrepresentation on the part of the copyright owner" in submitting the takedown notice.  *Rossi*, 391 F.3d at 1005.  Bawtinheimer alleges that RRT and Brown Rudnick engaged in subjective bad faith because they knew that the assertions of copyright infringement were false when they submitted takedown notices for Bawtinheimer's videos containing the Copyrighted Work.  ECF No. 26 ¶¶ 74, 78.  *Shande* is instructive.  That court dismissed plaintiff's original complaint because it failed adequately to allege defendant's subjective bad faith.  2024 WL 2306284, at *4.  Plaintiff's amended complaint alleged that "[i]n its take-down notice, Zoox knowingly and materially misrepresented to Epic that the Content infringed imagery contained in Zoox's autonomous vehicle software." *Id.*  The *Shande* quote held that contention was sufficient to allege subjective bad faith.  Accordingly, the Court finds that Bawtinheimer has sufficiently alleged that Defendants "knowingly misrepresented in the takedown notification that it had formed a good faith belief the video was not authorized by the law, i.e., did not constitute fair use." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016).

Accordingly, the Court will deny Defendants' motion to dismiss.

**B.     Motion for Preliminary Injunction**

Counterclaim-Plaintiff Bawtinheimer seeks a preliminary injunction "(1) requiring Defendants to withdraw all DMCA requests sent to YouTube regarding Bawtinheimer's videos; (2) enjoining Defendants from sending any more DMCA notices or other legal threats regarding these videos or any other clearly non-infringing videos; and (3) requiring Counterclaim-Defendants to seek approval from this Court to send any further DMCA notices regarding Bawtinheimer's videos." ECF No. 27 at 6.  The Court will deny the preliminary injunction.[2]

---

[2] Counterclaim-Defendants moved to strike certain evidence submitted with Bawtinheimer's reply brief.  ECF No. 39.  Because the challenged evidence had no effect on the Court's ruling, the motion is denied as moot.  *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, No. C11-2043JLR, 2014 WL 3579639, at *5 n.2 (W.D. Wash. July 21, 2014) (declining to strike new evidence that was not relevant to the Court's decision).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.    Mandatory or Prohibitory Injunction

Preliminarily, the parties dispute whether the relief sought is a prohibitory injunction or a mandatory injunction.  A preliminary injunction can be either mandatory or prohibitory.  *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 597 (9th Cir. 2025).  "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits."  *Marlyn Nutraceuticals., Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal alterations and quotation marks omitted).  A mandatory injunction compels the non-moving party to take affirmative action.  *San Luis Obispo Coastkeeper*, 161 F.4th at 597.  "[M]andatory injunctions are particularly disfavored, and place a higher burden on the plaintiff to show the facts and law *clearly* favor the moving party."  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (emphasis in original) (citation modified).  "In cases . . . in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction."  *Id.*[3]

Counterclaim-Defendants argue that an order requiring them to withdraw the pending DMCA notices would constitute a mandatory injunction.  Bawtinheimer does not dispute that point, but alleges that other courts granting similar relief have not applied the heightened standard required for a mandatory injunction.  ECF No. 36 at 10.

Bawtinheimer seeks two types of injunctive relief.  First, she seeks an order that Counterclaim-Defendants withdraw any previously submitted DMCA notices.  That would constitute a mandatory injunction because it would require the non-moving party to take affirmative action.  *See., e.g., Suzhou Angela Online Game Tech. Co. v. Snail Games USA, Inc.*, 2022 WL 5240656, at *2 (9th Cir. Oct. 6. 2022) ("Because [plaintiff's requested injunction would require [defendants] to take the affirmative action of retracting the [takedown letter], the district court properly concluded that [plaintiff] sought a mandatory injunction") (quotation omitted).

---

[3] The existence of different tests for mandatory and prohibitory injunctions has been the subject of substantial criticism, both because the difference between the tests can be unclear, and because the policy rationale for requiring a higher mandatory injunction standard is not well-developed.  *See Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017).

10

Second, Bawtinheimer asks the Court to enjoin Counterclaim-Defendants from submitting any further DMCA notices regarding her video podcasts without obtaining leave of court. That would be a prohibitory injunction, because it seeks to preserve the status quo during the pendency of the litigation. *Marlyn Nutraceuticals*, 571 F.3d at 878.

The Court next turns to whether the law "clearly favors" Bawtinheimer (for the mandatory injunction) and, alternatively, whether she is likely to succeed on the merits (for the prohibitory injunction).

### 2.    17 U.S.C. 512(f) Claim

As noted above, Section 512(f) seeks to prohibit the misuse of DMCA strikes. 17 U.S.C. § 512(f). *See Schneider v. YouTube, LLC*, No. 20-CV-04423-JD, 2023 WL 4534947, at *1 (N.D. Cal. May 31, 2023) ("Section 512(f) contemplates liability for persons that abuse the notice and takedown procedures in the DMCA."). "Under § 512(f) of the DMCA, a copyright owner may be held liable for damages caused by an erroneous invocation of the notice and takedown provision only if the owner did not possess a subjective good faith belief that its copyright was being infringed." *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008), *aff'd*, 628 F.3d 1175 (9th Cir. 2011) (citing *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004)). As Bawtinheimer acknowledges, that standard is a "high bar." ECF No. 27 at 24; *see e.g. Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016) ("If . . . a copyright holder forms a subjective *good faith* belief the allegedly infringing material does not constitute fair use, we are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion." (emphasis in original)).

Here, Counterclaim-Defendants present declarations from attorneys Graif and Church stating that the declarations considered the question of fair use before submitting the DMCA take-down requests and determined Bawtinheimer's use was not fair. *See, e.g.,* ECF No. 31-5 ¶ 8 ("Before submitting each takedown request, I considered whether the identified use was fair use, and formed a good faith belief that the identified use was copyright infringement."). The only way for Bawtinheimer to prevail on this motion in the face of such declarations is to provide evidence that Counterclaim-Defendants did not have such a belief. *See Lenz,* 815 F.3d at 1154 (noting that

11

"a copyright holder who pays lip service to the consideration of fair use by claiming it formed a good faith belief" can be liable under § 512(f) "when there is evidence to the contrary").  But she has no such evidence.

Instead, she argues that because the takedown notices were submitted by counsel experienced in copyright and trademark law, she should be subject to a lower standard of proof, i.e., the Court should draw inferences against Counterclaim-Defendants.  *See* ECF No. 27 at 24 ("Attorneys should be charged with some degree of constructive knowledge of fair use, even if laypeople deserve more latitude."); ECF No. 36 at 14 ("Experienced and top price copyright lawyers who sign that DMCA notice under penalty of perjury should be held to a different standard of knowledge and 'consideration' than [a legal assistant who issued a DMCA notice in *Lenz*].").  There is no case law in support of such a standard, and this Court will not invent one from whole cloth.  Discovery may disclose evidence in support of the subjective bad faith element of Bawtinheimer's § 512(f) claim.  But the evidence at this stage is insufficient to demonstrate a likelihood of success on the merits of Bawtinheimer's her § 512 claim.

Because a preliminary injunction cannot issue without "a fair chance of success on the merits," the Court does not consider the remaining *Winter* factors in deciding  to issue an injunction in this case.  *Sam Liang v. Van Nguyen*, No. CV 08-8211 PSG (JCX), 2009 WL 10671183, at *10 (C.D. Cal. Feb. 5, 2009) (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994)).  Bawtinheimer's request for an injunction is denied.[4]

---

[4] In light of this conclusion, it is not necessary for the Court to consider Bawtinheimer's arguments that she is likely to succeed in showing that her use of Cookie the Kookaburra is fair use.  To the extent that argument supports her request for an injunction concerning her § 512(f) claim, the Court need not consider it, because she has not shown a likelihood of success on the merits of that claim for other reasons.  She "cannot state claims for declaratory or injunctive relief as remedies where the bases for substantive liability fail."  *Feldman v. Discover Bank*, No. CV211670DMGRAOX, 2021 WL 8895125, at *4 (C.D. Cal. Dec. 22, 2021).  To the extent the argument supports her request for declaratory relief, she does not explain how a likelihood of success on the merits of that claim would support an injunction and the only case she cites is inapposite.  *Youth 71Five Ministries v. Williams*, 160 F.4th 964 (9th Cir. 2025).  Moreover, "declaratory judgment is a form of relief rather than a cause of action" and while Bawtenheimer can "continue to maintain a request for a declaratory relief . . . it should be described in the complaint as a request for relief, not a legal cause of action."  *Barton v. Cap. One Bank (USA), N.A.*, No. 12-CV-05412-JST, 2013 WL 12173918, at *8 (N.D. Cal. Apr. 16, 2013) (citing *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)) (noting that the Declaratory Judgment Act only creates a remedy).

**CONCLUSION**

For the foregoing reasons, the Court denies RRT and Brown Rudnick's motion to dismiss the counterclaim and Bawtinheimer's motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated:

_____

JON S. TIGAR
United States District Judge

---

It also appears that Bawtinheimer expects the Court to use the present motions as a vehicle for deciding the question of fair use as a matter of law.  The Court declines the invitation:

> The standard for determining preliminary injunctive relief is different than for determining summary judgment.  The former requires the Court to review the likelihood of success on the merits whereas the latter compels the Court to decide the issue on the merits. To hold otherwise would essentially transform a motion for preliminary injunction into one for summary judgment.

*Hernandez v. IndyMac Bank*, No. 212CV00369MMDCWH, 2014 WL 12644259, at *3 (D. Nev. Sept. 19, 2014).

United States District Court
Northern District of California