Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, Nevada 89147
Telephone: 702-420-2001
ecf@randazza.com

*Attorneys for Defendant and Counterclaim-Plaintiff,*
*Cheryl Bawtinheimer*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(OAKLAND DIVISION)**

| | |
|---|---|
| Rapid Relief Team (RRT) Ltd., <br><br>        Plaintiff and Counterclaim-Defendant, <br><br>        vs. <br><br> Cheryl Bawtinheimer, <br><br>        Defendant and Counterclaim-Plaintiff, <br><br>        vs. <br><br> Brown Rudnick LLP, Katy-Jade Church, and Michael Graif, <br><br>        Counterclaim-Defendants. | Case No.: 4:25-cv-10864-JST <br> JUDGE: Hon. Jon S. Tigar |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF CHERYL BAWTINHEIMER'S OPPOSITION TO COUNTERCLAIM DEFENDANTS KATY-JADE CHURCH AND MICHAEL GRAIF'S MOTION TO DISMISS COUNTERCLAIM ONE AND CROSS-MOTION TO TRANSFER IN WHOLE OR IN PART**

**TABLE OF CONTENTS**

1.0    INTRODUCTION AND BACKGROUND ..................................................................... 1

2.0    LEGAL STANDARD............................................................................................. 3

    2.1    Personal Jurisdiction Over New York Residents................................................. 3

    2.2    Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2) ........................................... 3

    2.3    Transfer of Venue ............................................................................................. 3

    2.4    Severance ......................................................................................................... 4

3.0    ARGUMENT....................................................................................................... 5

    3.1    The Case Should Not Be Dismissed with Respect to Graif and Church,
But Transfer is Appropriate.............................................................................. 5

    3.2    The Court Should Transfer at Least the 512(f) Counterclaim ........................... 9

4.0    CONCLUSION.................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. v. Kornrumpf*,
   2011 U.S. Dist. LEXIS 80631, 101 U.S.P.Q.2D (BNA) 1278 (N.D. Cal. 2011)..................... 12

*Briskin v. Shopify*,
   135 F.4th 739 (9th Cir. 2025)................................................................................. 5, 10

*Cabell v. Zorro Prods., Inc.*,
   2015 U.S. Dist. LEXIS 12845 (W.D. Wash. Feb. 3, 2015) ......................................... 9

*California Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*,
    29 F.4th 468 (9th Cir. 2022)................................................................................. 12

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
   928 F.2d 1509 (10th Cir. 1991)............................................................................. 5

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000)............................................................................... 11

*Cortina v. Bristol-Myers Squibb Co.*,
   2017 U.S. Dist. LEXIS 100437 (N.D. Cal. June 27, 2017) ....................................... 10

*Cruz-Aguilera v. INS*,
   245 F.3d 1070 (9th Cir. 2001).............................................................................. 4

*Doc's Dream, LLC v. Dolores Press, Inc.*,
    959 F.3d 357 (9th Cir. 2020) ............................................................................... 12

*Doe v. Geller*,
   533 F. Supp. 2d 996 (N.D. Cal. 2008) ............................................................... 5, 6, 7

*Dubose v. Bristol-Myers Squibb Co.*,
   2017 U.S. Dist. LEXIS 99504 (N.D. Cal. June 27, 2017) ....................................... 10

*F.D.I.C. v. McGlamery*,
   74 F.3d 218 (10th Cir. 1996)............................................................................... 4

*G4 Innovations LLC v. PACCAR, Inc.*,
  2024 U.S. Dist. LEXIS 22263 (D. Kan. Feb. 8, 2024)..........................................................5

*Goldlawr, Inc. v. Heiman*,
  369 U.S. 463 (1962) ..............................................................................................................4

*Holland Am. Line, Inc. v. Warsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007).............................................................................................3, 6

*Howard v. Powerhouse Coach, Inc.*,
  2025 U.S. Dist. LEXIS 154794 (S.D. Cal. Aug. 11, 2025)........................................... 10

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001)................................................................................................3

*Miller v. Hambrick*,
  905 F.2d 259 (9th Cir. 1990)...........................................................................................4, 9

*Myco Indus., v. BlephEx, LLC*,
   2019 U.S. Dist. LEXIS 145256, at *26 (E.D. Mich. Aug. 27, 2019).......................................12

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ..............................................................................................................4

*S.F. A.I.D.S. Found. v. Trump*,
   786 F. Supp. 3d 1184, 1212 (N.D. Cal. 2025)........................................................... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004).................................................................................................3

*Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*,
  24 F.3d 1088 (9th Cir. 1994)................................................................................................7

*Subsalve USA Corp. v. Watson Mfg., Inc.*,
  462 F.3d 41 (1st Cir. 2006) ................................................................................................ 10

*Tucson Embedded Sys. v. Turbine Powered Tech., LLC*,
   2014 U.S. Dist. LEXIS 133579 (D. Ariz. 2014) .......................................................... 12

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)...............................................................................................................4

**Statutes**

17 U.S.C. § 512.................................................................................................... passim

28 U.S.C. § 1391................................................................................................................ 9

28 U.S.C. § 1404...................................................................................................... 3, 4, 10

28 U.S.C. § 1406.......................................................................................................... 4, 10

28 U.S.C. § 1631.................................................................................................. 3, 4, 9, 10

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................. 10

Fed. R. Civ. P. 21 ........................................................................................................... 4, 5

Fed. R. Civ. P. 4 ....................................................................................................... passim

RANDAZZA | LEGAL GROUP

Defendant and Counterclaim-Plaintiff Cheryl Bawtinheimer opposes Counterclaim-Defendants Katy-Jade Church and Michael Graif's Motion to Dismiss (ECF No. 65) and cross-moves to transfer this case in part or (if the Court prefers) in whole to the Southern District of New York ("SDNY").[1]

## 1.0    INTRODUCTION AND BACKGROUND

In all humility, Defendants Graif and Church have a fair point. It really does not make a lot of sense that this case is in the Northern District of California ("ND Cal."). The Plaintiff is from Australia. Bawtinheimer is from Canada. Bawtinheimer is unaware of the Plaintiff having any connection to ND Cal. except this case. Meanwhile, RRT seems to have a very active presence in New York. Brown Rudnick has a large office in New York. Michael Graif is in New York. Katy-Jade Church is in London. We are only in ND Cal. because of a quirk of the DMCA, where Ms. Bawtinheimer had to consent to suit here in order to even try to restore her free speech rights. But ND Cal. is no more convenient for her than the Southern District of New York – which now that Graif and Church have raised the issue, seems like the better place for at least half, or perhaps all, of this case to be litigated.

It isn't that filing the Counterclaim here was wrong. Where else does one file a counterclaim but where the initial claim was filed? However, Bawtinheimer recognizes that now that Graif and Church moved to dismiss for lack of jurisdiction, this case contains a "poison pill." If Bawtinheimer prevails on her claim under 17 U.S.C. § 512(f), the matter will be delayed by an appeal of the decision on personal jurisdiction. This will result in significant additional cost, delay, and inconvenience. Bawtinheimer would prefer to avoid this and wishes to respect the two Counterclaim-Defendants' concerns about fair play and due process. And in fact, now that they raise it, it really does seem proper that the 512(f) counterclaim should be bifurcated out and sent to SDNY. That of course creates the risk that this Court will prefer to transfer the whole case there, but Bawtinheimer does not have a strong preference for either court. She has to defend

---

[1] Graif and Church also incorporate by reference RRT and Brown Rudnick's arguments for dismissal of the 17 U.S.C. § 512(f) Counterclaim. Bawtinheimer incorporates by reference her arguments in opposition to that motion. Truly, that is all resolvable on previously filed papers.

herself somewhere and has to prosecute her counterclaims somewhere, it might as well be where Graif wants it to be (and perhaps where Church would prefer to be).

Therefore, Ms. Bawtinheimer opposes the motion to *dismiss*.  Dismissal is inappropriate when transfer can cure the problem.  In order to ensure that any successful action under 17 U.S.C. § 512(f) will not be unnecessarily tied up in an appeal over jurisdiction and nobody can say they did not get fair play and due process, Ms. Bawtinheimer counter-moves this Court to transfer the case against Mr. Graif to his home district, the Southern District of New York ("SDNY"), Westchester division. *See* ECF No. 65-2, Declaration of Michael R. Graif, at ¶¶ 4–5. Indeed, all conduct relevant to the § 512(f) Counterclaim against him took place in SDNY. *Id.* at ¶ 6.  He truly does have a fair point about jurisdiction.  This should resolve his concerns about litigation in a far off and inconvenient forum, and any notions of due process.  But dismissal in lieu of transfer is reversible error, and this court should not do that.

That then brings us to Ms. Church.  She is a U.K. resident, ECF No. 65-1, Declaration of Katy-Jade Church at ¶ 4. Thus, her case is analyzed under Fed. R. Civ. P. 4(k)(2), which essentially treats the entire United States as one "state" for purposes of exercising personal jurisdiction.  If Church is amenable to suit in the United States, not just any single state, then she is subject to jurisdiction in Bawtinheimer's choice of forum, unless she suggests a more appropriate alternate forum.  Since the claims against her and Mr. Graif are nearly identical, Ms. Bawtinheimer also moves to transfer the 512(f) counterclaim against her to the same place as Mr. Graif.  Ms. Church is subject to suit in the United States and has suggested no alternate forum, but if she is going to defend herself from the United Kingdom, it would be more convenient to do so in New York than in California.  After all, the time-zone and travel burdens are roughly half of what they would be in California.

This now presents us with two additional defendants in the 512(f) action: Brown Rudnick and Rapid Relief Team.  Both of them *could have been* sued under 512(f) in New York, as they both have extensive operations in New York.  Therefore, to wrap the 512(f) claim up neatly, the Court should sever the 512(f) counterclaim in its entirety and send it to SDNY.

Beyond that, should the Court wish to exercise its discretion to transfer the entire matter to SDNY, either under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1631, Bawtinheimer does not object.

## 2.0    LEGAL STANDARD

### 2.1    Personal Jurisdiction Over New York Residents

The basic standards for determining whether specific personal jurisdiction is appropriate are compliance with any applicable long-arm statute, sufficient minimum contacts, and accordance with notions of fair play and substantial justice. The Ninth Circuit has a three-part test: (1) purposeful direction; (2) arising out of or relating to forum-related activities; and (3) reasonableness. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 2.2    Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) provides that, "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." A federal court should exercise jurisdiction over a foreign defendant pursuant to this rule where (1) the claim arises under federal law; (2) the defendant is not "subject to the personal jurisdiction of any state court of general jurisdiction"; and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line, Inc. v. Warsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). If the defendant does not suggest an alternate forum, other than that suggested by the plaintiff (or counterclaim-plaintiff), then the Court uses Rule 4(k)(2). *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) (adopted expressly in the 9th Cir. by *Holland*, 485 F.3d at 458-59).

### 2.3    Transfer of Venue

The Court should transfer the case, at least in part. We just need to figure out under which statute. A district court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). If venue is

RANDAZZA | LEGAL GROUP

improper, a court should, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Generally, the interest of justice requires transfer rather than dismissal. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962). "[T]he purpose of [§ 1404(a)] is to prevent the waste of time, energy and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A court should weigh both the private interests of the parties,[2] as well as the public interest,[3] in deciding whether to transfer a case.

If this Court finds that it cannot exercise personal jurisdiction over Graif or Church, then it should transfer the 512(f) claim to SDNY under 28 U.S.C. § 1631. *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990). When a court encounters a jurisdictional defect, transfer is mandatory when three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice. *See Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001). "[N]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (*quoting Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962)).

Whichever statute the Court chooses, transferring the 512(f) claim to SDNY makes the most sense and is the most respectful move when it comes to reverence for due process.

### 2.4    Severance

Regardless of whether transfer is appropriate under § 1404(a) or § 1631, transferring only the § 512(f) counterclaim is accomplished by severing that claim under Fed. R. Civ. P. 21. *See F.D.I.C. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996); *Chrysler Credit Corp. v. Country*

---

[2] Factors related to these interests include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981).

[3] These factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

*Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991). This presents some difficulties. "Severance under Rule 21 is appropriate when claims do not arise out of the same transaction or occurrence or have common questions of law or fact." *G4 Innovations LLC v. PACCAR, Inc.*, 2024 U.S. Dist. LEXIS 22263, *9 (D. Kan. Feb. 8, 2024). Courts may also order severance when it "serve[s] the ends of justice and further and prompt and efficient disposition of litigation." *Id.*

Because the Counterclaims arise from the same transaction or occurrence and severance would hamper timely resolution of the case, transfer of the entire case *may* present the most efficient path forward.  However, since the issue of improper conduct pertaining to the DMCA notices took place entirely in New York, it is a close call as to whether only the 512(f) claim should be severed and sent to SDNY or if the whole case should go there.

## 3.0    ARGUMENT

### 3.1    The Case Should Not Be *Dismissed* with Respect to Graif and Church, But Transfer is Appropriate

Graif and Church claim there is no purposeful direction and that asserting personal jurisdiction over them in ND Cal. would be unreasonable. In support of their argument, they cite *Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008), for the proposition that an attorney sending a DMCA notice does not establish personal jurisdiction over them. However, while the *Geller* court ultimately declined to exercise personal jurisdiction over the DMCA notice signatories, it expressly declined to hold that there was a lack of purposeful direction due to the lack of on-point case law. *Id.* at 1006. The Motion thus has no support for dismissal. Even if it did, Graif and Church's cases pre-date *Briskin v. Shopify*, 135 F.4th 739 (9th Cir. 2025), which established more permissive standards for finding purposeful direction in the context of online conduct.

*Geller* instead was decided on the reasonableness element of the personal jurisdiction analysis, finding that the balance of 7 factors weighed against personal jurisdiction being reasonable. *Id.* at 1007. While Graif and Church are distinct Counterclaim-Defendants, the analysis as to each of them is largely the same; the main distinction is that under Fed. R. Civ. P. 4(k)(2),

"rather than considering the contacts between the [defendant] and the forum state, [the court] consider[s] contacts with the nation as a whole." *Holland*, 485 F.3d at 462.

For the first factor, the extent of purposeful interjection, the *Geller* court found that sending a single DMCA notice to California, while perhaps sufficient to establish purposeful direction, "was not substantial." 533 F. Supp. 2d at 1007. What we have here is not a one-off incident, however. Church and Graif both sent multiple DMCA notices. When Bawtinheimer sent counter-notices, subjecting herself to personal jurisdiction here, Graif and Church continued to send additional DMCA notices, including notices for some of the same videos that YouTube had already reinstated, knowing that YouTube would not reinstate them again due to the existence of this litigation. Graif and Church did not have a brief, incidental connection with California; they stepped into the copyright ring in California, and YouTube provided the arena. Their connections with California are more extensive than anything at issue in *Geller*. However, this is a matter of apparent first impression, leading to a sticky analysis and a likely appeal. Thus dismissal is not appropriate, but transfer would clean this up, significantly. It would satisfy Graif's concerns, and to provide more convenience to Church.

The second factor, the burden on the counter-defendants, favors transfer, not dismissal. If it is dismissed, Bawtinheimer will re-file in SDNY. No counter-defendant is in California, and as Bawtinheimer consents to Graif's due process concerns and is prepared to accept him defending himself in his own backyard, that issue seems resolved. With respect to Church, while she may not find litigating in the United States to be convenient, she cannot escape the fact that if the United States is treated as one jurisdiction, as Rule 4(k)(2) mandates, then she has to answer for her violation of 17 U.S.C. § 512(f) *somewhere*. New York is more convenient for her than California, and Ms. Bawtinheimer prefers to let Ms. Church be less inconvenienced.

Church contends that the third factor, conflict with the sovereignty of the defendant's state, weighs in her favor because she is a U.K. citizen. She relies on *Geller*, which "presume[d] that England has a sovereign interest in adjudicating a claim against a British corporation and a British resident." 533 F. Supp. 2d at 1008. But that reasoning makes no sense when applied to a claim that

cannot be brought in a court in the defendant's country; U.S. courts are the *only* courts that can hear Bawtinheimer's Counterclaims. Church argues that the Court "should not dwell upon this consideration," but this Court should dwell on it and determine that it weighs heavily against Church. The Copyright Act does not apply in U.K. courts. So is this a gaping hole in 512(f)? That no matter what the bad faith is, as long as the person engaging in the bad faith is outside the United States, then U.S. courts are powerless to enforce 512(f)? What remedy is there for a 512(f) claim against a foreigner? None at all, because they can just lob censorship grenades over our borders, with no accountability? That cannot be.

Graif and Church claim that the fourth factor, the forum state's interest, weighs in their favor because Bawtinheimer is not a California resident. Sure. The facts here are unusual, in that Bawtinheimer could not bring an action for violation of 17 U.S.C. § 512(f) in a U.K. court because U.S. copyright law does not have extraterritorial application. *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994). Thus, by Graif and Church's reasoning, the 512(f) claim could **only** be brought against Graif in New York, and against Church or any other foreigner … *nowhere*, apparently. While the Court in *Geller* presented a parade of horribles if California had personal jurisdiction over anyone who sent a DMCA notice to it, the court failed to grapple with the fact that anyone who sends a *counter-notice* to YouTube automatically is subject to personal jurisdiction there, and thus this Court already acts as "an international court of internet law." 533 F. Supp. 2d at 1009. The *Geller* court also did not contemplate a situation like the one here, where the party affected by a DMCA notice sent by a non-U.S. party is not located in the U.S. However, to recognize the *Geller* court's concern that the Northern District of California could be flooded with 512(f) cases, it would be in the public interest for this Court to demonstrate that transfer to another forum is proper. After all, Ms. Bawtinheimer did not choose this forum; RRT did. It is in the public interest to transfer and spread the workload for 512(f) cases to other appropriate districts. And it would be appropriate for SDNY to evaluate 512(f) notices that were composed in, and sent from SDNY. (ECF No. 65-2, ¶ 6). This is especially so when it appears that Graif, the SDNY defendant most likely supervised Church's actions.

Graif and Church contend the fifth factor, efficient judicial resolution, is neutral. But Bawtinheimer must concede that it favors transfer. As discussed above, there is an appeal on personal jurisdiction baked in to the decision if this Court finds that jurisdiction is appropriate. That isn't efficient. Further, now that Mr. Graif has submitted testimony that all his relevant actions took place in New York, that means that all the discovery on that matter is going to be New York Discovery. The key witnesses as to the Counterclaims are located in New York, with the exception of Ms. Church. Bawtinheimer is happy to simplify this analysis: she will consent to jurisdiction in SDNY for purposes of all claims related to this action. Graif and Church are selling themselves short in this analysis, as SDNY has a significant connection to this case, given Brown Rudnick's major presence there and the fact that Graif is both a Counterclaim-Defendant and RRT's lead counsel. New York courts would have a greater interest than California courts in regulating the conduct of a New York attorney. This factor weighs in favor of transfer.

Graif and Church similarly argue that the sixth factor, California's importance to Bawtinheimer's interest in convenient and effective relief, is neutral. Bawtinheimer is neutral on California's connection to this dispute. Bawtinheimer suffered from the deliberate decision to request that YouTube, a California company, remove her videos—but she is happy to consent to having this case transferred to SDNY, which would alleviate Graif's inconvenience in having to litigate here, and mitigates Church's. The only legal issues in the case are matters of federal copyright law, which SDNY can adjudicate just as well as this Court, since copyright is uniform nationally. While Youtube is in ND Cal., it is not expected that Youtube will even be a witness.

As for the Seventh Factor, the unavailability of an alternative forum, SDNY is an appropriate alternative forum and agrees to let the 512(f) claim be litigated there (and would be amenable to the entire action being transferred there).

Graif and Church also argue that additional concerns counsel against asserting personal jurisdiction, but these do not change the analysis. While RRT could have sent the DMCA notices on its own, hired a DMCA agent to do so, or authorized anyone else to do it for them, it made a conscious decision to use Graif and Church, and Graif and Church chose to sign those notices

- 8 -
Bawtinheimer's Opposition to Church and Graif's Motion to Dismiss
Case No. 4:25-cv-10864-JST

rather than advise RRT to use a separate agent. Their willful conduct in sending the notices, signing them under penalty of perjury, and doing so despite having actual knowledge that Bawtinheimer's videos were not infringing, makes them culpable under 17 U.S.C. § 512(f). Graif claims that Bawtinheimer is strategically attempting to disqualify him as counsel, but he fails to engage in any self-reflection here.  It is unfortunate that he has to be a defendant, Ms. Bawtinheimer did not go hunting for him.  She did not tell him to sign the notices under penalty of perjury.  She did not choose this dispute. Further, if Graif and RRT can resolve the apparent conflict, then he would only be disqualified from being trial counsel, with plenty to do before that.

### 3.2    The Court Should Transfer at Least the 512(f) Counterclaim

There is no question that SDNY would be able to assert personal jurisdiction over Graif. He lives there, he conducts business there, and he sent the bad-faith DMCA notices from there. Indeed, the case could have been brought there had Ms. Bawtinheimer simply filed a separate action instead of a counterclaim. *See* 28 U.S.C. § 1391(b)(1).  Ms. Bawtinheimer could, but does not wish to, voluntarily dismiss the 512(f) counterclaim and immediately refile in SDNY.[4]  Even if the Court does not transfer the 512(f) counterclaim as a remedy for the motion that Graif and Church filed, Bawtinheimer independently moves this Court to transfer the 512(f) Counterclaim to SDNY. 28 U.S.C. § 1631 provides that when a district court determines it lacks jurisdiction over a case, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed . . . ." "Normally transfer will be in the interest of justice because . . . dismissal of an action that could have been brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990); *see also Cabell v. Zorro Prods., Inc.*, 2015 U.S. Dist. LEXIS 12845, *4–6 (W.D. Wash. Feb. 3, 2015). Where a party has admitted that personal jurisdiction would be appropriate in a different court, the matter should be transferred to that court instead of dismissed. *Howard v. Powerhouse Coach, Inc.*, 2025 U.S. Dist. LEXIS 154794, *15–16 (S.D. Cal. Aug. 11,

---

[4] Given the fact that Graif and Church evaded service until it drew motion practice, this is but one reason Bawtinheimer should not have to do so.

Bawtinheimer's Opposition to Church and Graif's Motion to Dismiss
Case No. 4:25-cv-10864-JST

2025). There is a rebuttable presumption in favor of transfer rather than dismissal. *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006).

That only addresses Graif, however. 28 U.S.C. § 1631 governs situations where transfer is warranted for lack of personal jurisdiction. This Court may exercise personal jurisdiction over Church under Fed. R. Civ. P. 4(k)(2). She is employed by an American law firm and sent DMCA notices into the United States to have an effect in the United States. This is sufficient. *See Shopify*, 135 F.4th at 757 (overruling prior rule that personal jurisdiction under Rule 4(k)(2) required "express aiming" at the United States). Nevertheless, if the court disagrees, it would be more efficient for the Counterclaims against her to be transferred to SDNY along with Graif, as it would make little sense for two different courts to simultaneously adjudicate nearly identical claims in parallel.  Therefore, if jurisdiction is improper, then § 1631 mandates transfer.  If jurisdiction is proper, then transfer is still  warranted under 28 U.S.C. §§ 1404 and 1406(a).

Brown Rudnick has offices in SDNY, and so general jurisdiction exists there just as much as in this District. RRT's lead counsel in this matter is in New York. The key witness, Michael Graif, lives in New York and all records related to his sending of the DMCA notices are in New York. *See Cortina v. Bristol-Myers Squibb Co.*, 2017 U.S. Dist. LEXIS 100437, *15–16 (N.D. Cal. June 27, 2017) (transferring case to New York upon finding that most evidence and witnesses would be located there). While litigating anywhere outside the U.K. may pose an inconvenience to Church, SDNY would be less inconvenient to her. It would be most convenient for all parties, aside from perhaps Bawtinheimer, to litigate this case in SDNY, and so transfer there would be in keeping with the spirit of Fed. R. Civ. P. 1. While transfer may be denied "if the result is merely to shift the inconvenience from one party to another," *Dubose v. Bristol-Myers Squibb Co.*, 2017 U.S. Dist. LEXIS 99504, *14 (N.D. Cal. June 27, 2017), Ms. Bawtinheimer willingly shifts inconvenience for Graif and Church to inconvenience for herself.

Moving RRT to New York would be under the same analysis as Church.  It is a foreign organization, thus making analysis of it under Rule 4(k)(2) proper.  And litigation in New York would be no inconvenience to it.  Its lead counsel is there, thus making it more convenient, not

less.   Further, it has regular contacts in SDNY. *See* FDNY Foundation Search & Rescue Symposium (NY RRT team in-forum activity), available at: https://www.rrtglobal.org/us/; 2019 national airport campaign, NY dateline, NY/Newark airport service, available at: https://www.prnewswire.com/news-releases/rapid-relief-team-continues-to-feed-airport-workers-across-the-country-300784879.html.

Ms. Bawtinheimer takes the position that upon transferring the Counterclaims against Mr. Graif to SDNY, the Court should transfer all of the 512(f) Counterclaim-Defendants to SDNY so that the entire 512(f) claim can be litigated in one place.

If we stop there, this would leave a bifurcated case, where the copyright infringement claim and the declaratory judgment counterclaim would be left here.  While this may seem somewhat inefficient, Ms. Bawtinheimer does not object to bifurcation. To be clear, Bawtinheimer is choosing to forego any assertion that her 512(f) Counterclaim should be tried in this Court, and requests transfer of *that* Counterclaim to SDNY. She does so for the sake of greater convenience and expedience in resolving all pending and foreseeable issues in this case.

However, it would not be proper to sever the *declaratory action counterclaim* from the copyright infringement claim itself.  Those *must* stay together.  Therefore, if this Court does not send the whole thing to SDNY, it should keep the case in chief and the dec action here.  "Courts generally consider five factors when reviewing potential severance under Rule 20 and/or 21." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000). Those factors are "whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether one or the other party would suffer prejudice if severance were granted or denied; and (5) whether different witnesses and documentary proof are required for the separate claims." *Id.* (internal citations removed).

Here, each severance factor favors keeping the Counterclaims with RRT's infringement claim. In particular, the claims share a common occurrence and questions of law and fact. Further, interests in judicial efficiency would be harmed by bifurcating these claims, thus causing

Bawtinheimer prejudice. Finally, the claims present no differences in expected witnesses or documentary evidence. Accordingly, if the Court chooses to use its discretion to send the *entire case* to SDNY, Ms. Bawtinheimer would seek neither reconsideration nor appeal.

However, it would be proper for the Court to keep the copyright claim and the counterclaim, especially since there is a pending motion for a preliminary injunction, which should be granted. As discussed at the hearing on the 18th of this month, this is not just a declaratory judgment hovering in space – it is a declaration of rights under the Copyright Act. *Doc's Dream, LLC v. Dolores Press, Inc* made clear that claims brought as declaratory judgment actions that seek to resolve rights under the Copyright Act are, in effect, copyright claims. 959 F.3d 357, 362 (9th Cir. 2020); *see also*, *Tucson Embedded Sys. v. Turbine Powered Tech., LLC,* 2014 U.S. Dist. LEXIS 133579 (D. Ariz. 2014); *Adobe Sys. v. Kornrumpf*, 2011 U.S. Dist. LEXIS 80631, 101 U.S.P.Q.2D (BNA) 1278 (N.D. Cal. 2011); *Myco Indus., v. BlephEx, LLC*, 2019 U.S. Dist. LEXIS 145256, at *26 (E.D. Mich. Aug. 27, 2019) (the Eastern District of Michigan granted a preliminary injunction when a declaratory judgment plaintiff sought relief that stopped the declaratory judgment defendant from claiming patent infringement) (reversed on other grounds, 955 F.3d 1, 15 (Fed. Cir. 2020); *see also S.F. A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1212 (N.D. Cal. 2025) (injunction granted on declaratory judgment claim) (Tigar, U.S.D.J.); *California Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) (upheld a preliminary injunction in a case that sought declaratory relief).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Bawtinheimer's Opposition to Church and Graif's Motion to Dismiss
Case No. 4:25-cv-10864-JST

**4.0    CONCLUSION**

For the foregoing reasons, the Court should deny the motion to dismiss, and instead transfer the 512(f) counterclaim to the U.S. District Court for the Southern District of New York. With respect to transferring the entire action to SDNY, Ms. Bawtinheimer is neutral, but recognizes that the Court could use its discretion properly by transferring the entire action, rather than severing the 512(f) claim.

Dated: June 23, 2026.

Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC
/s/ Marc J. Randazza
Marc J. Randazza, SBN 269535
Alex J. Shepard, SBN 295058
8991 W Flamingo Rd., Suite B
Las Vegas, NV 89147

*Attorneys for Defendant and Counterclaim-Plaintiff, Cheryl Bawtinheimer*

Case No. 4:25-cv-10864-JST

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza